███████████████████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WEBROOT, INC. and<br>OPEN TEXT, INC.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CROWDSTRIKE, INC., and<br>CROWDSTRIKE HOLDINGS, INC.,<br><br>　　　　　　Defendants. | Case No.  6:22-cv-00241-ADA-DTG<br><br>JURY TRIAL DEMANDED<br><br>███████████████<br><br><br>**PUBLIC VERSION** |
| CROWDSTRIKE, INC.,<br><br>　　　　　Counterclaim-Plaintiff,<br><br>　v.<br><br>WEBROOT, INC. and<br>OPEN TEXT, INC.,<br><br>　　　　　Counterclaim-Defendants. | |

## DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT FOR PATENT INFRINGEMENT

Defendants CrowdStrike, Inc. and CrowdStrike Holdings, Inc.[1] (collectively, "CrowdStrike" or "Defendants"), by and through their undersigned counsel, state the following as their Answer to Plaintiffs Webroot, Inc. ("Webroot") and Open Text, Inc.'s ("Open Text") (collectively, "Plaintiffs") Complaint for Patent Infringement ("Complaint") filed on March 4,

---

[1] CrowdStrike Holdings, Inc. is not a proper party to this lawsuit.  CrowdStrike Holdings, Inc. is a holding company.  CrowdStrike Holdings, Inc. does not manufacture, sell, or market any products.

2022. Each paragraph of the Answer below responds to the corresponding numbered or lettered paragraph of the Complaint. All allegations not expressly admitted herein are denied by CrowdStrike.

1.     CrowdStrike denies that "[t]his case involves patented technologies that helped to revolutionize, and have become widely adopted in, the fields of malware detection, network security, and endpoint protection." CrowdStrike admits that "[e]ndpoint protection involves securing endpoints or entry points of end-user devices (e.g., desktops, laptops, mobile devices, etc.) on a network or in a cloud from cybersecurity threats, like malware."

2.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2, and therefore denies them.

3.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 3, and therefore denies them.

4.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 4, and therefore denies them.

5.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 5, and therefore denies them.

6.     CrowdStrike denies the allegations in paragraph 6.

7.     CrowdStrike denies that the Patents-in-Suit "helped transform the way malware detection and network security is conducted." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 7, and therefore denies them.

8.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8, and therefore denies them.

9.     CrowdStrike denies that the Patents-in-Suit "include[]" "new methods," "new architectures," "new forensic techniques," or "new advantaged memory scanning techniques." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 9, and therefore denies them.

10.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 10, and therefore denies them.

11.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 11, and therefore denies them.

12.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 12, and therefore denies them.

13.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 13, and therefore denies them.

14.     CrowdStrike denies the allegations in paragraph 14.

15.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 15, and specifically denies that it has committed any acts of infringement. CrowdStrike admits that CrowdStrike, Inc. is a wholly owned subsidiary of CrowdStrike Holdings, Inc. CrowdStrike admits that Falcon Platform and Falcon endpoint security are CrowdStrike products and services. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 15, and therefore denies them.

16.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 16, and specifically denies that it has committed any acts of infringement or unfair competition in this District or elsewhere. CrowdStrike admits that the Complaint purports to seek damages. CrowdStrike denies the remaining allegations contained in paragraph 16.

## NATURE OF THE CASE

17.     CrowdStrike admits that the Complaint purports to allege patent infringement for the Patents-in-Suit. CrowdStrike denies that it has infringed or currently infringes any of Plaintiffs' patents.

## THE PARTIES

18.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 18, and therefore denies them.

19.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 19, and therefore denies them.

20.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 20, and therefore denies them.

21.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 21, and therefore denies them.

22.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 22, and therefore denies them.

23.     CrowdStrike admits that CrowdStrike Holdings, Inc. is a Delaware corporation and has an office at 206 E 9th Street Suite 1400, Austin, TX 78701. CrowdStrike Holdings, Inc. is a holding company that does not make, use, sell, offer to sell, or import any product or service. To the extent the allegations in paragraph 23 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike admits that CrowdStrike Holdings, Inc. is the

parent of and directly and wholly owns CrowdStrike, Inc. CrowdStrike denies the remaining allegations in paragraph 23.

24.     CrowdStrike admits that CrowdStrike, Inc. is a Delaware corporation. To the extent the allegations in paragraph 24 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike admits that it is registered with the Secretary of State to conduct business in Texas. CrowdStrike denies the remaining allegations in paragraph 24.

## JURISDICTION AND VENUE

25.     CrowdStrike admits that this action invokes the United States patent laws, and that this Court has subject matter jurisdiction over meritorious patent law claims generally pursuant to 28 U.S.C. §§ 1331 and 1338(a). CrowdStrike denies, however, that the Complaint sets forth a valid or meritorious claim for patent infringement. CrowdStrike denies the remaining allegations in paragraph 25.

26.     For purposes of this case only, CrowdStrike does not contest personal jurisdiction. CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 26, and specifically denies that it has committed any acts of infringement. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 26.

27.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 27. To the extent the allegations in paragraph 27 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and

context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 27.

28.     CrowdStrike admits that venue is proper in this District for purposes of this particular action only, but denies that venue is convenient or in the interests of justice under 28 U.S.C. § 1404(a). CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 28, and specifically denies that it has committed any acts of infringement. CrowdStrike denies the remaining allegations in paragraph 28.

29.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 29. To the extent the allegations in paragraph 29 of the Complaint purport to describe and/or quote from one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 29.

30.     CrowdStrike admits that CrowdStrike Holdings, Inc. is the parent of and directly and wholly owns CrowdStrike, Inc. CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 30, and specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 30 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 30.

31.     CrowdStrike admits that it has conducted and does conduct business in the State of Texas. To the extent the allegations in paragraph 31 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 31.

32.     CrowdStrike admits that it has employees located in Austin, Texas. CrowdStrike denies the remaining allegations in paragraph 32.

33.     CrowdStrike admits that it has employees located in Austin, Texas with relevant information. CrowdStrike denies the remaining allegations in paragraph 33.

34.     CrowdStrike admits that it has employees responsible for sales and technical support located in Austin, Texas. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 34, and therefore denies them.

35.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 35, and specifically denies that it has committed any acts of infringement. CrowdStrike denies the remaining allegations in paragraph 35.

36.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 36, and specifically denies that it has committed any acts of infringement. CrowdStrike denies the remaining allegations in paragraph 36.

37.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 37, and specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 37 of the Complaint purport to describe one or more documents, CrowdStrike asserts

that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 37.

38.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 38, and therefore denies them.

39.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 39, and specifically denies that it has committed any acts of infringement. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 39.

40.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 40, and specifically denies that it has committed any acts of infringement. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 40.

41.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 41, and specifically denies that it has committed any acts of infringement. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. To the extent the allegations in paragraph 41 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 41.

42.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 42, and specifically denies that it has committed any acts of infringement. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. To the extent the allegations in paragraph 42 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 42.

43.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 43, and specifically denies that it has committed any acts of infringement. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. To the extent the allegations in paragraph 43 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 43.

44.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 44, and specifically denies that it has committed any acts of infringement. To the extent the allegations in paragraph 44 of the Complaint purport to describe one or more documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context. CrowdStrike denies the remaining allegations in paragraph 44.

## PLAINTIFFS' ALLEGED PATENTED INNOVATIONS

45.     CrowdStrike denies that Plaintiffs and their predecessors "were all pioneers and leading innovators." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 45, and therefore denies them.

46.     CrowdStrike denies that the Patents-in-Suit contain "innovations." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 46, and therefore denies them.

Alleged Malware Detection Patents
U.S. Patent Nos. 8,418,250 and 8,726,389

47.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 47, and therefore denies them.

48.     CrowdStrike admits that what appears to be a copy of United States Patent No. 8,418,250 is attached as Exhibit 1 to the Complaint and that, on its face, the '250 Patent is entitled "Methods and Apparatus for Dealing with Malware," and bears a filing date of June 30, 2006 and an issue date of April 9, 2013. CrowdStrike denies that the '250 Patent was duly and legally issued. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 48, and therefore denies them.

49.     CrowdStrike admits that what appears to be a copy of United States Patent No. 8,726,389 is attached as Exhibit 2 to the Complaint and that, on its face, the '389 Patent is entitled "Methods and Apparatus for Dealing with Malware," and bears a filing date of July 8, 2012 and an issue date of May 13, 2014. CrowdStrike denies that the '389 Patent was duly and legally issued. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 49, and therefore denies them.

50.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 50, and therefore denies them.

51.     To the extent the allegations in paragraph 51 of the Complaint purport to describe what is disclosed in the '389 Patent, CrowdStrike asserts that the '389 Patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 51, and therefore denies them.

52.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 52, and therefore denies them.

53.     To the extent the allegations in paragraph 53 of the Complaint purport to describe what is disclosed in the '389 Patent, CrowdStrike asserts that the '389 Patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 53, and therefore denies them.

54.     CrowdStrike denies that the Patents-in-Suit disclose a "contrast" to disclosures in the preceding paragraphs of the Complaint. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 54, and therefore denies them.

55.     To the extent the allegations in paragraph 55 of the Complaint purport to describe what is disclosed in the '389 Patent and '250 Patent, CrowdStrike asserts that the '389 Patent and '250 Patent are the best source of their full content and context. CrowdStrike denies the allegations

to the extent they do not accurately represent the patents' full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 55, and therefore denies them.

56.     CrowdStrike denies that the Patents-in-Suit disclose "advantages" or "improve[] the computer network." To the extent the allegations in paragraph 56 of the Complaint purport to describe what is disclosed in the '250 Patent prosecution history, CrowdStrike asserts that the '250 Patent prosecution history is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '250 Patent prosecution history's full content and context.  CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 56, and therefore denies them.

57.     CrowdStrike denies that the Patents-in-Suit disclose "inventions" that are "necessarily rooted in computer technology" or "address[] [a] fundamental computer technology problem with a computer technology solution." CrowdStrike denies that the Patents-in-Suit "improve the technical functioning of the computer network . . . to improve network security." CrowdStrike denies that the Patents-in-Suit disclose "technical improvements [to] address identified weaknesses in conventional systems and processes." To the extent the allegations in paragraph 57 of the Complaint purport to describe what is disclosed in the '250 Patent, CrowdStrike asserts that the '250 Patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '250 Patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 57, and therefore denies them.

58.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 58, and therefore denies them.

59.    CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 59, and therefore denies them.

60.    CrowdStrike denies that the '250 Patent discloses "technical improvements" or provides any "advantages." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 60, and therefore denies them.

61.    CrowdStrike denies that the '250 Patent "improves [any] systems." To the extent the allegations in paragraph 61 of the Complaint purport to describe what is disclosed in the '250 Patent, CrowdStrike asserts that the '250 Patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '250 Patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 61, and therefore denies them.

62.    CrowdStrike denies that the claims of the '250 Patent "are not routine or conventional." To the extent the allegations in paragraph 62 of the Complaint purport to describe what is disclosed in the '250 Patent, CrowdStrike asserts that the '250 Patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '250 Patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 62, and therefore denies them.

63.    CrowdStrike denies that the '250 Patent discloses anything that is "unconventional in nature" or that it discloses any "technical advantages and improvements." To the extent the allegations in paragraph 63 of the Complaint purport to describe what is disclosed in the '250 Patent prosecution history, CrowdStrike asserts that the '250 Patent prosecution history is the best

source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '250 Patent prosecution history's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 63, and therefore denies them.

64.     CrowdStrike denies that the '389 Patent discloses anything "unconventional." To the extent the allegations in paragraph 64 of the Complaint purport to describe what is disclosed in the '389 Patent, CrowdStrike asserts that the '389 Patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '389 Patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 64, and therefore denies them.

65.     To the extent the allegations in paragraph 65 of the Complaint purport to describe what is disclosed in the '389 Patent, CrowdStrike asserts that the '389 Patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '389 Patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 65, and therefore denies them.

66.     To the extent the allegations in paragraph 66 of the Complaint purport to describe what is disclosed in the '389 Patent and '250 Patent, CrowdStrike asserts that these patents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patents' full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 66, and therefore denies them.

67.     CrowdStrike denies that the Patents-in-Suit "address issues unique to computer networks and computer network operation" or that "[t]hese patents all provide unique network security enhancement that solves [any] technical problem." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 67, and therefore denies them.

68.     CrowdStrike denies that the Patents-in-Suit "improve the operation of computer networks" or that "these patents provide a technological solution to a technology problem." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 68, and therefore denies them.

<u>Alleged Forensic Visibility Patents</u>
<u>U.S. Patent Nos. 9,578,045 and 10,257,224</u>

69.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 69, and therefore denies them.

70.     CrowdStrike admits that what appears to be a copy of United States Patent No. 9,578,045 is attached as Exhibit 3 to the Complaint and that, on its face, the '045 Patent is entitled "Methods and Apparatus for Providing Forensic Visibility into Systems and Networks," and bears a filing date of May 5, 2014 and an issue date of February 21, 2017. CrowdStrike denies that the '045 Patent was duly and legally issued. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 70, and therefore denies them.

71.     CrowdStrike admits that what appears to be a copy of United States Patent No. 10,257,224 is attached as Exhibit 4 to the Complaint and that, on its face, the '224 Patent is entitled "Methods and Apparatus for Providing Forensic Visibility into Systems and Networks," and bears a filing date of February 20, 2017 and an issue date of April 9, 2019. CrowdStrike denies that the

'224 Patent was duly and legally issued. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 71, and therefore denies them.

72.     CrowdStrike denies that the Patents-in-Suit "claim inventive and patentable subject matter." To the extent the allegations in paragraph 72 of the Complaint purport to describe what is disclosed in the '045 Patent and '224 Patent, CrowdStrike asserts that the patents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patents' full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 72, and therefore denies them.

73.     CrowdStrike denies that the Patents-in-Suit "improved on prior art" or "provid[e] a technical solution to a technical problem." To the extent the allegations in paragraph 73 of the Complaint purport to describe what is disclosed in the '045 Patent and '224 Patent, CrowdStrike asserts that the patents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patents' full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 73, and therefore denies them.

74.     CrowdStrike denies that the Patents-in-Suit "improve network security" or that they "identified weakness in conventional systems and processes." To the extent the allegations in paragraph 74 of the Complaint purport to describe what is disclosed in the '045 Patent and '224 Patent, CrowdStrike asserts that the patents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patents' full

content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 74, and therefore denies them.

75.     To the extent the allegations in paragraph 75 of the Complaint purport to describe what is disclosed in the '045 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 75, and therefore denies them.

76.     CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 76, and therefore denies them.

77.     CrowdStrike denies that the Patents-in-Suit "disclose technical improvements." To the extent the allegations in paragraph 77 of the Complaint purport to describe what is disclosed in the '045 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 77, and therefore denies them.

78.     CrowdStrike denies that the Patents-in-Suit "provide technical advantages and improvements." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 78, and therefore denies them.

79.     To the extent the allegations in paragraph 79 of the Complaint purport to describe what is disclosed in the '045 Patent and '224 Patent, CrowdStrike asserts that the patents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they

do not accurately represent the patents' full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 79, and therefore denies them.

80.     CrowdStrike denies that the Patents-in-Suit disclose any "systems and methods [that] improve[] the system performance of computing devices." To the extent the allegations in paragraph 80 of the Complaint purport to describe what is disclosed in the '045 Patent prosecution history, CrowdStrike asserts that the '045 Patent prosecution history is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '045 Patent prosecution history's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 80, and therefore denies them.

81.     CrowdStrike denies that the Patents-in-Suit are directed to "solving a technical problem and a specific improvement in computer functionality." To the extent the allegations in paragraph 81 of the Complaint purport to describe what is disclosed in the '045 Patent and '224 Patent Prosecution Histories, CrowdStrike asserts that these documents are the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent these documents' full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 81, and therefore denies them.

82.     CrowdStrike denies that the Patents-in-Suit are directed to "provid[ing] a technical solution to [any] technical problem." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 82, and therefore denies them.

<u>U.S. Patent No. 10,284,591</u>

83.     CrowdStrike admits that what appears to be a copy of United States Patent No. 10,284,591 is attached as Exhibit 5 to the Complaint and that, on its face, the '591 Patent is entitled "Detecting and Preventing Execution of Software Exploits," and bears a filing date of January 27, 2015 and an issue date of May 7, 2019. CrowdStrike denies that the '591 Patent was duly and legally issued. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 83, and therefore denies them.

84.     CrowdStrike denies that the '591 Patent discloses anything "novel." To the extent the allegations in paragraph 84 of the Complaint purport to describe what is disclosed in the '551 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 84, and therefore denies them.

85.     CrowdStrike denies that the '591 Patent discloses anything "unconventional." To the extent the allegations in paragraph 85 of the Complaint purport to describe what is disclosed in the '551 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context.  CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 85, and therefore denies them.

86.     CrowdStrike denies that the '591 Patent discloses anything "fundamentally rooted in computer technology" or "addresses a problem that specifically arises in the realm of computer

technology." CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 86, and therefore denies them.

87.     CrowdStrike denies that the '591 Patent discloses anything "unconventional" or "accomplish[es] an improvement in computer security and functionality" or that it is "directed to a specific technological solution to a problem unique to computers." To the extent the allegations in paragraph 87 of the Complaint purport to describe what is disclosed in the '551 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context.  CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 87, and therefore denies them.

<u>U.S. Patent No. 10,599,844</u>

88.     CrowdStrike admits that what appears to be a copy of United States Patent No. 10,599,844 is attached as Exhibit 6 to the Complaint and that, on its face, the '844 Patent is entitled "Automatic Threat Detection of Executable Files Based on Static Data Analysis," and bears a filing date of May 12, 2015 and an issue date of March 24, 2020.  CrowdStrike denies that the '844 Patent was duly and legally issued.  CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 88, and therefore denies them.

89.     CrowdStrike denies that the '844 Patent "improves upon conventional approaches." To the extent the allegations in paragraph 89 of the Complaint purport to describe what is disclosed in the '884 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form

a belief as to the truth or falsity of the remaining allegations in paragraph 89, and therefore denies them.

90.     To the extent the allegations in paragraph 90 of the Complaint purport to describe what is disclosed in the '884 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 90, and therefore denies them.

91.     To the extent the allegations in paragraph 91 of the Complaint purport to describe what is disclosed in the '884 Patent prosecution history, CrowdStrike asserts that the '884 Patent prosecution history is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the '884 Patent prosecution history's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 91, and therefore denies them.

92.     CrowdStrike denies that the '844 Patent "significantly improved upon and addressed shortcomings" in the disclosures set forth in the preceding paragraphs or that it set forth anything "unconventional" or that it "improves on the operation of the computer network." To the extent the allegations in paragraph 92 of the Complaint purport to describe what is disclosed in the '884 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 92, and therefore denies them.

93.     To the extent the allegations in paragraph 93 of the Complaint purport to describe what is disclosed in the '884 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 93, and therefore denies them.

94.     To the extent the allegations in paragraph 94 of the Complaint purport to describe what is disclosed in the '884 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 94, and therefore denies them.

95.     CrowdStrike denies that the '844 Patent is "directed to specific solutions to problems necessarily rooted in computer technology." To the extent the allegations in paragraph 95 of the Complaint purport to describe what is disclosed in the '884 Patent, CrowdStrike asserts that this patent is the best source of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 95, and therefore denies them.

96.     CrowdStrike denies that the '844 Patent discloses "unconventional techniques" or "addresses a problem necessarily involving computers and improves upon the operation of computer networks." To the extent the allegations in paragraph 96 of the Complaint purport to describe what is disclosed in the '884 Patent, CrowdStrike asserts that this patent is the best source

of its full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the patent's full content and context. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 96, and therefore denies them.

## ACCUSED PRODUCTS

97.     CrowdStrike Inc. admits that it offers, sells, and uses products that provide endpoint security and protect against malware. CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 97, and specifically denies that it has committed any acts of infringement.

98.     CrowdStrike Inc. admits that its products include the CrowdStrike Falcon Platform. To the extent the allegations in paragraph 98 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

99.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 99. To the extent the allegations in paragraph 99 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

100.     CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 100. To the extent the allegations in paragraph 100 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full

content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

101.    CrowdStrike Inc. admits that its products include Falcon Prevent. CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 101. To the extent the allegations in paragraph 101 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

102.    CrowdStrike Inc. admits that its products include Falcon X.  CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 102. To the extent the allegations in paragraph 102 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

103.    CrowdStrike Inc. admits that its products include Falcon Insight. CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 103. To the extent the allegations in paragraph 103 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

104.    CrowdStrike Inc. admits that its products include Falcon Firewall Management. To the extent the allegations in paragraph 104 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content

and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

105.    CrowdStrike Inc. admits that its products include Falcon Spotlight.  CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 105. To the extent the allegations in paragraph 105 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

106.    CrowdStrike Inc. admits that its products include managed services. CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 106. To the extent the allegations in paragraph 106 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

107.    CrowdStrike Inc. admits that its products include CrowdStrike Threat Graph. CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 107. To the extent the allegations in paragraph 107 of the Complaint purport to describe what is disclosed in documents, CrowdStrike asserts that those documents are the best source of their full content and context. CrowdStrike denies the allegations to the extent they do not accurately represent the documents' full content and context.

108.    CrowdStrike denies any of the allegations as against CrowdStrike in paragraph 108.

**PLAINTIFFS' FIRST CAUSE OF ACTION**
**(ALLEGED INFRINGEMENT OF THE '250 PATENT)**

109.    CrowdStrike reasserts and incorporates its responses in the preceding paragraphs.

110.   CrowdStrike denies the allegations in paragraph 110 of the Complaint.

111.   CrowdStrike admits that what appears to be claim 1 of the '250 Patent is recited at paragraph 111 of the Complaint. CrowdStrike denies the remaining allegations in paragraph 111.

112.   CrowdStrike denies the allegations in paragraph 112 of the Complaint.

113.   CrowdStrike denies the allegations in paragraph 113 of the Complaint.

114.   CrowdStrike denies the allegations in paragraph 114 of the Complaint.

115.   CrowdStrike denies the allegations in paragraph 115 of the Complaint.

116.   CrowdStrike denies the allegations in paragraph 116 of the Complaint.

117.   CrowdStrike denies the allegations in paragraph 117 of the Complaint.

118.   CrowdStrike denies the allegations in paragraph 118 of the Complaint.

119.   CrowdStrike denies the allegations in paragraph 119 of the Complaint.

120.   CrowdStrike denies the allegations in paragraph 120 of the Complaint.

121.   CrowdStrike denies the allegations in paragraph 121 of the Complaint.

122.   CrowdStrike denies the allegations in paragraph 122 of the Complaint.

123.   CrowdStrike denies the allegations in paragraph 123 of the Complaint.

124.   CrowdStrike denies the allegations in paragraph 124 of the Complaint.

125.   CrowdStrike denies the allegations in paragraph 125 of the Complaint.

126.   CrowdStrike denies the allegations in paragraph 126 of the Complaint.

127.   CrowdStrike denies the allegations in paragraph 127 of the Complaint.

128.   CrowdStrike denies the allegations in paragraph 128 of the Complaint.

129.   CrowdStrike denies the allegations in paragraph 129 of the Complaint.

130.   CrowdStrike admits that it became aware of the '250 patent as of the date it was notified of the filing of this action. CrowdStrike lacks knowledge or information sufficient to form

a belief as to the truth or falsity of the remaining allegations in paragraph 130, and therefore denies them.

131.    CrowdStrike denies the allegations in paragraph 131 of the Complaint.

132.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 132 of the Complaint.

133.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect and willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 133 of the Complaint.

134.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 134 of the Complaint.

135.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 135 of the Complaint.

136.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 136 of the Complaint.

137.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 137 of the Complaint.

138.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein.  CrowdStrike denies the remaining allegations in paragraph 138 of the Complaint.

139.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 139 of the Complaint.

140.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein.  CrowdStrike denies the remaining allegations in paragraph 140 of the Complaint.

141.    Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 141 of the Complaint.

142.    CrowdStrike denies the allegations in paragraph 142 of the Complaint.

143.    Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 143 of the Complaint.

144.    Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 144 of the Complaint.

## PLAINTIFFS' SECOND CAUSE OF ACTION
## (ALLEGED INFRINGEMENT OF THE '389 PATENT)

145.    CrowdStrike reasserts and incorporates its responses in the preceding paragraphs.

146.    CrowdStrike denies the allegations in paragraph 146 of the Complaint.

147.    CrowdStrike admits that what appears to be claim 1 of the '389 Patent is recited at paragraph 147 of the Complaint.  CrowdStrike denies the remaining allegations in paragraph 147.

148.    CrowdStrike denies the allegations in paragraph 148 of the Complaint.

149.    CrowdStrike denies the allegations in paragraph 149 of the Complaint.

150.    CrowdStrike denies the allegations in paragraph 150 of the Complaint.

151.    CrowdStrike denies the allegations in paragraph 151 of the Complaint.

152.    CrowdStrike denies the allegations in paragraph 152 of the Complaint.

153.    CrowdStrike denies the allegations in paragraph 153 of the Complaint.

154.    CrowdStrike denies the allegations in paragraph 154 of the Complaint.

155.    CrowdStrike denies the allegations in paragraph 155 of the Complaint.

156.    CrowdStrike denies the allegations in paragraph 156 of the Complaint.

157.    CrowdStrike denies the allegations in paragraph 157 of the Complaint.

158.    CrowdStrike denies the allegations in paragraph 158 of the Complaint.

159.    CrowdStrike denies the allegations in paragraph 159 of the Complaint.

160.    CrowdStrike denies the allegations in paragraph 160 of the Complaint.

161.    CrowdStrike denies the allegations in paragraph 161 of the Complaint.

162.    CrowdStrike denies the allegations in paragraph 162 of the Complaint.

163.    CrowdStrike denies the allegations in paragraph 163 of the Complaint.

164.    CrowdStrike denies the allegations in paragraph 164 of the Complaint.

165.    CrowdStrike denies the allegations in paragraph 165 of the Complaint.

166.    CrowdStrike denies the allegations in paragraph 166 of the Complaint.

167.    CrowdStrike denies the allegations in paragraph 167 of the Complaint.

168.    CrowdStrike denies the allegations in paragraph 168 of the Complaint.

169.     CrowdStrike denies the allegations in paragraph 169 of the Complaint.

170.     CrowdStrike denies the allegations in paragraph 170 of the Complaint.

171.     CrowdStrike denies the allegations in paragraph 171 of the Complaint.

172.     CrowdStrike admits that it became aware of the '389 Patent as of the date it was notified of the filing of this action. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 172, and therefore denies them.

173.     CrowdStrike denies the allegations in paragraph 173 of the Complaint.

174.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 174 of the Complaint.

175.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect and willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 175 of the Complaint.

176.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 176 of the Complaint.

177.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 177 of the Complaint.

178.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 178 of the Complaint.

179.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 179 of the Complaint.

180.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 180 of the Complaint.

181.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 181 of the Complaint.

182.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 182 of the Complaint.

183.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 183 of the Complaint.

184.     CrowdStrike denies the allegations in paragraph 184 of the Complaint.

185.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 185 of the Complaint.

186.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 186 of the Complaint.

## PLAINTIFFS' THIRD CAUSE OF ACTION
## (ALLEGED INFRINGEMENT OF THE '045 PATENT)

187.    CrowdStrike reasserts and incorporates its responses in the preceding paragraphs.

188.    CrowdStrike denies the allegations in paragraph 188 of the Complaint.

189.    CrowdStrike admits that what appears to be claim 1 of the '045 Patent is recited at paragraph 189 of the Complaint. CrowdStrike denies the remaining allegations in paragraph 189.

190.    CrowdStrike denies the allegations in paragraph 190 of the Complaint.

191.    CrowdStrike denies the allegations in paragraph 191 of the Complaint.

192.    CrowdStrike denies the allegations in paragraph 192 of the Complaint.

193.    CrowdStrike denies the allegations in paragraph 193 of the Complaint.

194.    CrowdStrike denies the allegations in paragraph 194 of the Complaint.

195.    CrowdStrike denies the allegations in paragraph 195 of the Complaint.

196.    CrowdStrike denies the allegations in paragraph 196 of the Complaint.

197.    CrowdStrike denies the allegations in paragraph 197 of the Complaint.

198.    CrowdStrike denies the allegations in paragraph 198 of the Complaint.

199.    CrowdStrike denies the allegations in paragraph 199 of the Complaint.

200.    CrowdStrike denies the allegations in paragraph 200 of the Complaint.

201.    CrowdStrike denies the allegations in paragraph 201 of the Complaint.

202.    CrowdStrike denies the allegations in paragraph 202 of the Complaint.

203.    CrowdStrike denies the allegations in paragraph 203 of the Complaint.

204.    CrowdStrike denies the allegations in paragraph 204 of the Complaint.

205.    CrowdStrike denies the allegations in paragraph 205 of the Complaint.

206.    CrowdStrike admits that it became aware of the '045 Patent as of the date it was notified of the filing of this action. CrowdStrike lacks knowledge or information sufficient to form

a belief as to the truth or falsity of the remaining allegations in paragraph 206, and therefore denies them.

207.   CrowdStrike denies the allegations in paragraph 207 of the Complaint.

208.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 208 of the Complaint.

209.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect and willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 209 of the Complaint.

210.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 210 of the Complaint.

211.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 211 of the Complaint.

212.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 212 of the Complaint.

213.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 213 of the Complaint.

214.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 214 of the Complaint.

215.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 215 of the Complaint.

216.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 216 of the Complaint.

217.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 217 of the Complaint.

218.     CrowdStrike denies the allegations in paragraph 218 of the Complaint.

219.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 219 of the Complaint.

220.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 220 of the Complaint.

## PLAINTIFFS' FOURTH CAUSE OF ACTION
### (ALLEGED INFRINGEMENT OF THE '224 PATENT)

221.     CrowdStrike reasserts and incorporates its responses in the preceding paragraphs.

222.     CrowdStrike denies the allegations in paragraph 222 of the Complaint.

223.    CrowdStrike admits that what appears to be claim 1 of the '224 Patent is recited at paragraph 223 of the Complaint. CrowdStrike denies the remaining allegations in paragraph 223.

224.    CrowdStrike denies the allegations in paragraph 224 of the Complaint.

225.    CrowdStrike denies the allegations in paragraph 225 of the Complaint.

226.    CrowdStrike denies the allegations in paragraph 226 of the Complaint.

227.    CrowdStrike denies the allegations in paragraph 227 of the Complaint.

228.    CrowdStrike denies the allegations in paragraph 228 of the Complaint.

229.    CrowdStrike denies the allegations in paragraph 229 of the Complaint.

230.    CrowdStrike denies the allegations in paragraph 230 of the Complaint.

231.    CrowdStrike denies the allegations in paragraph 231 of the Complaint.

232.    CrowdStrike denies the allegations in paragraph 232 of the Complaint.

233.    CrowdStrike denies the allegations in paragraph 233 of the Complaint.

234.    CrowdStrike denies the allegations in paragraph 234 of the Complaint.

235.    CrowdStrike denies the allegations in paragraph 235 of the Complaint.

236.    CrowdStrike denies the allegations in paragraph 236 of the Complaint.

237.    CrowdStrike denies the allegations in paragraph 237 of the Complaint.

238.    CrowdStrike denies the allegations in paragraph 238 of the Complaint.

239.    CrowdStrike denies the allegations in paragraph 239 of the Complaint.

240.    CrowdStrike admits that it became aware of the '224 Patent as of the date it was notified of the filing of this action. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 240, and therefore denies them.

241.    CrowdStrike denies the allegations in paragraph 241 of the Complaint.

242. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 242 of the Complaint.

243. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect and willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 243 of the Complaint.

244. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 244 of the Complaint.

245. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 245 of the Complaint.

246. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 246 of the Complaint.

247. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 247 of the Complaint.

248. Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 248 of the Complaint.

249.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 249 of the Complaint.

250.   Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 250 of the Complaint.

251.   Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 251 of the Complaint.

252.   CrowdStrike denies the allegations in paragraph 252 of the Complaint.

253.   Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 253 of the Complaint.

254.   Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 254 of the Complaint.

## PLAINTIFFS' FIFTH CAUSE OF ACTION
## (ALLEGED INFRINGEMENT OF THE '591 PATENT)

255.   CrowdStrike reasserts and incorporates its responses in the preceding paragraphs.

256.   CrowdStrike denies the allegations in paragraph 256 of the Complaint.

257.   CrowdStrike admits that what appears to be claim 1 of the '591 Patent is recited at paragraph 257 of the Complaint. CrowdStrike denies the remaining allegations in paragraph 257.

258.   CrowdStrike denies the allegations in paragraph 258 of the Complaint.

259.   CrowdStrike denies the allegations in paragraph 259 of the Complaint.

260.    CrowdStrike denies the allegations in paragraph 260 of the Complaint.

261.    CrowdStrike denies the allegations in paragraph 261 of the Complaint.

262.    CrowdStrike denies the allegations in paragraph 262 of the Complaint.

263.    CrowdStrike denies the allegations in paragraph 263 of the Complaint.

264.    CrowdStrike denies the allegations in paragraph 264 of the Complaint.

265.    CrowdStrike denies the allegations in paragraph 265 of the Complaint.

266.    CrowdStrike denies the allegations in paragraph 266 of the Complaint.

267.    CrowdStrike denies the allegations in paragraph 267 of the Complaint.

268.    CrowdStrike denies the allegations in paragraph 268 of the Complaint.

269.    CrowdStrike denies the allegations in paragraph 269 of the Complaint.

270.    CrowdStrike denies the allegations in paragraph 270 of the Complaint.

271.    CrowdStrike denies the allegations in paragraph 271 of the Complaint.

272.    CrowdStrike denies the allegations in paragraph 272 of the Complaint.

273.    CrowdStrike denies the allegations in paragraph 273 of the Complaint.

274.    CrowdStrike denies the allegations in paragraph 274 of the Complaint.

275.    CrowdStrike denies the allegations in paragraph 275 of the Complaint.

276.    CrowdStrike denies the allegations in paragraph 276 of the Complaint.

277.    CrowdStrike denies the allegations in paragraph 277 of the Complaint.

278.    CrowdStrike admits that it became aware of the '591 Patent as of the date it was notified of the filing of this action. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 278, and therefore denies them.

279.    CrowdStrike denies the allegations in paragraph 279 of the Complaint.

280.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 280 of the Complaint.

281.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect and willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 281 of the Complaint.

282.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 282 of the Complaint.

283.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 283 of the Complaint.

284.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 284 of the Complaint.

285.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 285 of the Complaint.

286.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 286 of the Complaint.

287.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 287 of the Complaint.

288.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 288 of the Complaint.

289.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 289 of the Complaint.

290.     CrowdStrike denies the allegations in paragraph 290 of the Complaint.

291.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 291 of the Complaint.

292.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 292 of the Complaint.

## PLAINTIFFS' SIXTH CAUSE OF ACTION
### (ALLEGED INFRINGEMENT OF THE '844 PATENT)

293.     CrowdStrike reasserts and incorporates its responses in the preceding paragraphs.

294.     CrowdStrike denies the allegations in paragraph 294 of the Complaint.

295.     CrowdStrike admits that what appears to be claim 1 of the '844 Patent is recited at paragraph 295 of the Complaint. CrowdStrike denies the remaining allegations in paragraph 295.

296.     CrowdStrike denies the allegations in paragraph 296 of the Complaint.

297.     CrowdStrike denies the allegations in paragraph 297 of the Complaint.

298.    CrowdStrike denies the allegations in paragraph 298 of the Complaint.

299.    CrowdStrike denies the allegations in paragraph 299 of the Complaint.

300.    CrowdStrike denies the allegations in paragraph 300 of the Complaint.

301.    CrowdStrike denies the allegations in paragraph 301 of the Complaint.

302.    CrowdStrike denies the allegations in paragraph 302 of the Complaint.

303.    CrowdStrike denies the allegations in paragraph 303 of the Complaint.

304.    CrowdStrike denies the allegations in paragraph 304 of the Complaint.

305.    CrowdStrike denies the allegations in paragraph 305 of the Complaint.

306.    CrowdStrike denies the allegations in paragraph 306 of the Complaint.

307.    CrowdStrike admits that it became aware of the '884 patent as of the date it was notified of the filing of this action. CrowdStrike lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 307, and therefore denies them.

308.    CrowdStrike denies the allegations in paragraph 308 of the Complaint.

309.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 309 of the Complaint.

310.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect and willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 310 of the Complaint.

311.    Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 311 of the Complaint.

312.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 312 of the Complaint.

313.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 313 of the Complaint.

314.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 314 of the Complaint.

315.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 315 of the Complaint.

316.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 316 of the Complaint.

317.     Plaintiffs dismissed their allegations in the Complaint as to pre-suit indirect infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 317 of the Complaint.

318.     Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 318 of the Complaint.

319.     CrowdStrike denies the allegations in paragraph 319 of the Complaint.

320.    Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 320 of the Complaint.

321.    Plaintiffs dismissed their allegations in the Complaint as to willful infringement (Dkt. 22), and thus, CrowdStrike does not respond to those allegations in its Answer herein. CrowdStrike denies the remaining allegations in paragraph 321 of the Complaint.

## PRAYER FOR RELIEF

CrowdStrike denies that Plaintiffs are entitled to any relief whatsoever, including all relief requested in Plaintiffs' "Prayer for Relief." To the extent any statement in the Prayer for Relief is deemed factual, it is denied.

## DEMAND FOR JURY TRIAL

This paragraph sets forth Plaintiffs' jury demand and requires no response.

## AFFIRMATIVE DEFENSES/DEFENSES

1.    Subject to the responses above, CrowdStrike alleges and asserts the following defenses in response to the allegations, which are based upon an investigation that is not complete, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the defenses described below, subject to its responses above, CrowdStrike specifically reserves all rights to allege additional defenses that become known through the course of discovery and further investigation in this case.

## FIRST DEFENSE
### (Non-Infringement)

2.    CrowdStrike does not infringe and has not infringed, directly or indirectly, either literally or under the doctrine of equivalents, contributed to the infringement of, or induced the

infringement of and is not liable for infringement of any valid and enforceable claim of the '250, '389, '045, '224, '591, and '844 Patents (collectively, the "Patents-in-Suit"), including under the reverse doctrine of equivalents.

## SECOND DEFENSE
### (Invalidity)

3.      The claims of the Patents-in-Suit are invalid and unenforceable under 35 U.S.C. § 101 because the claims are directed to abstract ideas or other non-statutory subject matter.

4.      The claims of the Patents-in-Suit are invalid and unenforceable under 35 U.S.C. § 102 because the claims lack novelty, and are taught and suggested by the prior art.

5.      The claims of the Patents-in-Suit are invalid and unenforceable under 35 U.S.C. § 103 because the claims are obvious in view of the prior art.

6.      The claims of the Patents-in-Suit are invalid and unenforceable for obviousness-type double patenting.

7.      The claims of the Patents-in-Suit are invalid and unenforceable for failure to satisfy the conditions set forth in 35 U.S.C. § 112, including failure of written description, lack of enablement, and claim indefiniteness.

## THIRD DEFENSE
### (Failure To State A Claim On Which Relief May Be Grated)

8.      Plaintiffs fail to state a claim on which relief may be granted, including by failing to adequately plead indirect infringement or willful infringement.

## FOURTH DEFENSE
### (Prosecution History Estoppel)

9.      By reason of statements, representations, concessions, admissions, arguments, and/or amendments, whether explicit or implicit, made by or on behalf of the applicants during the prosecution of the patent applications that led to the issuance of the Patents-in-Suit, Plaintiffs'

claims of patent infringement are barred in whole or in part by the doctrine of prosecution history estoppel.

## FIFTH DEFENSE
### (Estoppel and Laches)

10.     On information and belief, Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, laches, disclaimer, and/or waiver.

## SIXTH DEFENSE
### (Limitations on Patent Damages)

Plaintiffs' claims for damages, if any, against CrowdStrike for alleged infringement of the Patents-in-Suit are limited by 35 U.S.C. §§ 286, 287, and/or 288. Plaintiffs' claims for damages also are limited by 28 U.S.C. § 1498.

## SEVENTH DEFENSE
### (No Irreparable Harm)

11.     Plaintiffs are not entitled to any form of injunctive relief because Plaintiffs have not suffered and will not suffer irreparable harm due to CrowdStrike's alleged infringement and Plaintiffs have an adequate remedy at law.

## EIGHTH DEFENSE
### (Unclean Hands)

12.     Plaintiffs' claims are barred by the doctrine of unclean hands.

## NINTH DEFENSE
### (Disclosure Dedication Defense)

13.     By reason of proceedings in the United States Patent & Trademark Office, and by reasons of amendments, statements, admissions, omissions and/or representations made by the applicants or on their behalf, Plaintiffs are estopped from asserting infringement of the Patents-in-Suit against CrowdStrike.

**RESERVATION OF ADDITIONAL DEFENSES**

14.     CrowdStrike expressly reserves the right to raise and allege additional defenses pursuant to Rule 8 of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses at law or in equity, that may exist or in the future may be available based on further investigation and discovery.

**DEMAND FOR JURY TRIAL**

15.     CrowdStrike respectfully requests a jury trial on issues so triable by right.

**REQUEST FOR RELIEF**

WHEREFORE, CrowdStrike respectfully requests that the Court enter judgment in its favor and against Plaintiffs as follows:

1.     Dismissing, with prejudice, Plaintiffs' claims against CrowdStrike;

2.     Denying all relief that Plaintiffs seek in the Complaint;

3.     Finding this case to be exceptional under 35 U.S.C. § 285 and awarding CrowdStrike its costs and attorneys' fees; and

4.     Awarding any other relief the Court deems just and equitable.

**<u>COUNTERCLAIMS</u>**

In accordance with Rule 13 of the Federal Rules of Civil Procedure, CrowdStrike hereby alleges and asserts the following Counterclaims against Webroot:

**THE PARTIES**

1.     Counterclaim Plaintiff CrowdStrike, Inc. ("CrowdStrike")[2] is a Delaware corporation with its principal place of business at 150 Mathilda Place, Suite 300, Sunnyvale, CA 94086.

---

[2] CrowdStrike, Inc. is referred to in CrowdStrike's Counterclaims as "CrowdStrike."

2.      On information and belief, Counterclaim Defendant Webroot, Inc. ("Webroot") is a Delaware corporation with its principal place of business at 285 Interlocken Crescent, Suite 800, Broomfield, CO 80021.

3.      On information and belief, Counterclaim Defendant OpenText, Inc. ("OpenText")[3] is a Delaware corporation with its principal place of business at 275 Frank Tompa Drive, Waterloo, ON N2L 0A1, Canada. On information and belief, OpenText can be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

## JURISDICTION AND VENUE

4.      CrowdStrike's Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. This Court has subject matter jurisdiction over CrowdStrike's Counterclaims under 28 U.S.C. §§ 1331, 1338, 2201, and 2202. An actual controversy exists under the Declaratory Judgment Act because Counterclaim-Defendants have asserted and are asserting infringement of U.S. Patent Nos. 8,418,250 ("the '250 Patent"); 8,726,389 ("the '389 Patent"); 9,578,045 ("the '045 Patent"); 10,257,224 ("the '224 Patent"); 10,284,591 ("the '591 Patent"); and 10,859,844 ("the '844 Patent") (collectively, the "Patents-in-Suit") by CrowdStrike and CrowdStrike denies those allegations.

5.      The court has personal jurisdiction over Counterclaim-Defendants at least by virtue of their consent to the personal jurisdiction of this Court by the filing of their Complaint against CrowdStrike in this Court.

---

[3]      Webroot and OpenText are collectively referred to in CrowdStrike's Counterclaims as "Counterclaim-Defendants."

6.      For the purposes of the Counterclaims set forth herein, and without waiving any defense of lack of venue or improper venue in connection with the Complaint filed by Counterclaim-Defendants and its causes of action, venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because: (1) this action was filed in this District by Counterclaim-Defendants and Counterclaim-Defendants have thus submitted to personal jurisdiction in this Court and has consented to this venue by filing its Complaint here; and (2) some of the present Counterclaims are in response to the allegations raised in Counterclaim-Defendants' Complaint.

## FACTUAL BACKGROUND

### The Parties

7.      CrowdStrike is a pioneer in endpoint security for preventing malware attacks.

8.      Since 2011, CrowdStrike has redefined security with the world's most advanced cloud-native solutions that protect and enable the people, processes and technologies that drive modern enterprise. CrowdStrike has received numerous awards and accolades year-after-year for its continued groundbreaking innovation in the security sector.

9.      For example, early on in 2015 CrowdStrike was named as one of Forbes Most Promising Companies. That same year, CrowdStrike was named Technology Pioneer by World Economic Forum. CrowdStrike has also been recognized as a Deloitte Technology Fast 500 company (2016), was named in the CNBC Disruptor 50 List (2017) and in Forbes' 2017 Cloud 100 List. CrowdStrike was named a "Visionary" by Gartner (2018) and won SC Magazine's 2020 Best Security Company Award. These are just a few examples.

10.     Today CrowdStrike has grown from a technology startup into a successful, publicly traded company. CrowdStrike's patented solutions secure the most critical areas of enterprise risk to keep customers ahead of today's adversaries and stop breaches. Powered by the CrowdStrike Security Cloud, the CrowdStrike Falcon Platform leverages real-time indicators of attack and

threat intelligence to prevent malware attacks. CrowdStrike customers benefit from superior protection, better performance, reduced complexity and immediate time-to-value. No other company is able to provide the level of service and security protection that CrowdStrike is able to provide to its customers.

11.     Webroot is a software company. Since its inception, Webroot has offered a variety of antivirus solutions, but has failed to keep up with the demands of the complex, ever-evolving security market. For example, in 2019 hackers gained access to a Webroot SecureAnywhere console and used it to spread malicious ransomware.[4] Webroot's products and services do not rival those provided by CrowdStrike.

12.



13.     After years of struggling to gain a foothold in the industry, Webroot and its now-parent company OpenText have resorted to a large-scale patent monetization campaign. Instead of

---

[4]     *See* Ex. C.

[5]

competing in the marketplace, the Counterclaim-Defendants now use their patents to compete in the courtroom. In 2022 alone, Counterclaim-Defendants filed five complaints alleging infringement of their patents. Aside from their patent infringement action against CrowdStrike, Counterclaim-Defendants have filed patent infringement actions against Forcepoint, Trend Micro, Sophos Limited and Kaspersky.[6]

14.     Contrary to Counterclaim-Defendants' allegations in their Complaint, however, as discussed below, it is the Counterclaim-Defendants that have capitalized from CrowdStrike's successful innovation by willfully infringing CrowdStrike's patented technology and using this patented technology in Counterclaim-Defendant Webroot's products and to maintain Counterclaim-Defendant OpenText's own security.

<u>CrowdStrike's Intellectual Property Rights</u>

15.     CrowdStrike's patents claim fundamental innovations that improve reliability, efficiency, and quality in endpoint security. These innovations are critical to a customer's ability to protect against malware reliably and effectively. CrowdStrike's patented technology has gained widespread popularity in the industry, as is evident by the fact that ███████████████ ████████████████████████ and is found in many security products today. The two Asserted Counterclaim Patents discussed below are examples of CrowdStrike's patented technology that capture and reflect these innovations.

16.     U.S. Patent No. 9,043,903 ("the '903 Patent") and U.S. Patent No. 9,904,784 ("the '784 Patent") (collectively, "the Asserted Counterclaim Patents") are part of the same patent family and generally disclose and claim systems and processes related to kernel-level security.

---

[6]   *See* Case Nos. 6-22-cv-00243 (W.D. Tex.), 6-22-cv-00240 (W.D. Tex.), 6-22-cv-00239 (W.D. Tex.) and 6-22-cv-00342 (W.D. Tex.).

17.     CrowdStrike, Inc. is and has been the owner of all rights, title and interest in the '903 Patent, entitled "Kernel-Level Security Agent" since it was duly and properly issued by the United States Patent and Trademark Office ("USPTO") on May 26, 2015. CrowdStrike owns all rights, title, and interest in the '903 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement. CrowdStrike is the current assignee of the '903 Patent. A true and correct copy of the '903 Patent is attached as Exhibit A. The inventions set forth in the '903 Patent relate to a kernel-level security agent.

18.     CrowdStrike, Inc. is and has been the owner of all rights, title and interest in the '784 Patent, entitled "Kernel-Level Security Agent" since it was duly and properly issued by the USPTO on February 27, 2018. CrowdStrike owns all rights, title, and interest in the '784 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement. CrowdStrike is the current assignee of the '784 Patent. A true and correct copy of the '784 Patent is attached as Exhibit B. The inventions set forth in the '784 Patent relate to a kernel-level security agent.

19.     Prior to the inventions set forth in the '903 and '784 Patents, traditional antivirus software utilized "signature-based" and heuristic techniques to detect malware, which involved receiving malware definitions from a remote security service and scanning a host device to see whether any matching malware definitions were present. *See, e.g.*, '784 Patent at 1:32-38.[7] This type of malware detection was limited by available static malware definitions and, thus, incapable of adapting to new types of malware.

---

[7]  Since the '784 and '903 Patents share the same specification, citations to one specification apply equally to the other specification.

20.     The '903 and '784 Patents are directed to patentable subject matter that improves on this prior art antivirus software by disclosing the tools used for malware detection to greatly reduce a machine's susceptibility to malware. For example, as recited in the claims of the '784 and '903 Patents, the claimed security system "observ[es]" "events" in a host computing device and filters them (in addition to other claimed steps) to determine whether a virus is present instead of relying on fixed malware signatures as taught by the prior art. *See, e.g.*, '784 Patent at 3:38-51, claim 1; '903 Patent at claim 21. By relying on event data rather than fixed signatures, the claimed inventions are able to detect malware even if adversaries modify its signature. '784 Patent at 3:42-45.

21.     Further, the Asserted Counterclaim Patents provide a technical solution by allowing the machine to take preventable actions to limit the machine's exposure to malware and prevent its spread. For example, the aforementioned event monitoring allows security agents to fool adversaries into thinking malware is working while taking preventative action to avoid its spread. *Id.* at 3:45-51, claim 1; '903 Patent at claim 21. Thus, the '784 and '903 Patents provide novel and unconventional solutions to these issues, including real-time event monitoring and filtering to enable updated preventative action in the face of changing malware definitions. *See, e.g.*, '784 Patent claim 1; '903 Patent claim 21.

22.     In addition, the '903 and '784 Patents also enable real-time updates related to threats across remote devices. Instead of receiving malware definition updates from a static remote security service as in traditional systems ('903 Patent at 1:19-22), the inventions in the '903 and the '784 patents allow endpoints to communicate information about known malware threats across remote devices or groups via the cloud. *See, e.g.*, *id.* at 2:19-37. This innovation was a critical

security enhancement, since traditionally target machines operated as isolated "security islands" and purveyors of malware could separately attack a number of targets with no obstacle.

23.     These innovations represent a major breakthrough in the security space. Indeed, CrowdStrike's new technology has paved the way for CrowdStrike's continued success and exponential growth year-over-year.

24.     CrowdStrike's invention has also won widespread industry praise. For example, as mentioned above, the Falcon Platform, which incorporates CrowdStrike's patented technologies at issue, has won numerous awards for the effectiveness of its threat intelligence.

25.     Webroot (and its parent OpenText) are now attempting to capitalize off of CrowdStrike's groundbreaking innovation. As discussed in more detail below, Counterclaim-Defendants have copied CrowdStrike's inventive technology through Webroot's SecureAnywhere and BrightCloud Intelligence offerings. Counterclaim-Defendants continue to violate CrowdStrike's patented rights by using these technologies without a license.

26.     Webroot (and, thus, its parent OpenText) provides endpoint security software and systems that, without authorization, implement CrowdStrike's patented technologies. Webroot's infringing security software and services include, but are not limited to, Webroot's SecureAnywhere/Endpoint Protection and Webroot Intelligence Network/BrightCloud offerings ("Accused Webroot Products"), including prior versions and functionalities that are the same or essentially the same as that described herein.

27.     CrowdStrike brings these counterclaims to seek damages for and to ultimately stop Counterclaim-Defendants' continued infringement of CrowdStrike's Asserted Counterclaim Patents by the Accused Webroot Products, as discussed in detail below. As a result of Counterclaim-Defendants' unlawful competition in this District and elsewhere in the United

States, CrowdStrike has lost sales and profits and suffered irreparable harm, including lost market share and goodwill.

<u>Counterclaim-Defendants' Alleged Claims Against CrowdStrike</u>

28.     Webroot claims to own the Patents-in-Suit, which purport to cover technologies relating to endpoint security.

29.     Counterclaim-Defendants have accused the CrowdStrike Counterclaimants of infringing the Patents-in-Suit through the CrowdStrike Counterclaimants' alleged making, using, advertising, offering for sale, installing, selling and/or otherwise providing one or more of the products and services known as the Falcon Platform, which provides endpoint protection (referred to as the "Accused CrowdStrike Products").

**FIRST COUNT**
<u>(Infringement by Counterclaim-Defendants of U.S. Patent No. 9,043,903 B2)</u>

30.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

31.     Counterclaim-Defendants have infringed and continue to infringe one or more claims of the '903 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court. CrowdStrike will continue to suffer irreparable harm unless this Court enjoins Counterclaim-Defendants, their agents, employees, representatives, and all others acting in concert with Counterclaim-Defendants from infringing the '903 Patent.

32.     As set forth in detail below (and the corresponding Exhibits thereto), Webroot's SecureAnywhere/Endpoint Protection infringes at least claims 21 and 23 of the '903 Patent.

33.     For example, claim 21 of the '903 Patent recites:

21. A computer-implemented method comprising:

observing, by a kernel-level security agent, events on a computing device;

filtering, by the kernel-level security agent, the observed events using configurable filters;

routing, by the kernel-level security agent, the filtered events to one or more kernel-mode event consumers of the kernel-level security agent; and

taking action, by the kernel-level security agent, based at least on one of the filtered events, wherein taking the action includes communicating, by a communications module of the kernel-level security agent, with one or more remote systems, the communications module being implemented at the kernel-level.

34.     To the extent the preamble is considered limiting, Webroot's SecureAnywhere/Endpoint Protection meets the preamble of claim 21 of the '903 Patent. *See, e.g.*:

## WSA Business - Endpoint Protection Admin Guide Overview

Webroot SecureAnywhere™ Endpoint Protection secures your enterprise from malware and other threats by combining Webroot's behavior recognition technology with cloud computing. Endpoint Protection includes a Management Portal, also called an Admin Console, which is a centralized website used to view and manage your endpoints.

An endpoint can be any Windows corporate workstation, such as a PC, laptop, server, or virtual server. You can deploy SecureAnywhere software to these endpoints within seconds, protecting users immediately. Once SecureAnywhere runs a scan on the endpoints, it reports their status into the Management Portal.

(Ex. D at 2.)



(Ex. E at 8.)

35.     Webroot's SecureAnywhere/Endpoint Protection meets the first element of claim 21 of the '903 Patent that recites "observing, by a kernel-level security agent, events on a computing device." *See, e.g.*:

### Installing on Terminal (RDS) Servers and Citrix XenApp

When installed on a Terminal server (RDS server) or Citrix XenApp for desktop/session brokering or hosted shared desktops, the WSA agent protects the environment by sharing its kernel module across sessions and provides a user process for each. The Webroot Management console displays the hosting server and each session as a combined single entry or device for reporting and management. The WSA agent does not support being streamed via application visualization.

(Ex. D at 128.)

## About Dwell Time

Webroot has the smallest, lightest least intrusive agent on the market with multiple protection mechanisms on the agent, which provide incredible protection against the latest threats.

On our Webroot Intelligence Network, we process millions of events a day to better improve the efficacy in the solution from a detection perspective. However, as we do not, nor can anyone in the industry, catch every piece of malware on the device at first sight, although Webroot does a very good job at this.

In 2014, Gartner Magic Quadrant named Webroot as the *only* vendor with the ability to see Dwell Time.

We continue to introduce more forensic-like capabilities to ensure our customers have as much context around malicious events as possible, without the noise associated with other event-based solutions.

(Ex. D at 207.)

36. Webroot's SecureAnywhere/Endpoint Protection meets the second element of claim 21 of the '903 Patent that recites "filtering, by the kernel-level security agent, the observed events using configurable filters." *See, e.g.*:



(Ex. D at 517.)



(Ex. E at 8.)

37.    Webroot's SecureAnywhere/Endpoint Protection meets the third element of claim 21 of the '903 Patent that recites "routing, by the kernel-level security agent, the filtered events to one or more kernel-mode event consumers of the kernel-level security agent." *See, e.g.*:



(Ex. E at 8.)

## About Dwell Time

Webroot has the smallest, lightest least intrusive agent on the market with multiple protection mechanisms on the agent, which provide incredible protection against the latest threats.

On our Webroot Intelligence Network, we process millions of events a day to better improve the efficacy in the solution from a detection perspective. However, as we do not, nor can anyone in the industry, catch every piece of malware on the device at first sight, although Webroot does a very good job at this.

In 2014, Gartner Magic Quadrant named Webroot as the *only* vendor with the ability to see Dwell Time.

We continue to introduce more forensic-like capabilities to ensure our customers have as much context around malicious events as possible, without the noise associated with other event-based solutions.

(Ex. D at 207.)

38.     Webroot's SecureAnywhere/Endpoint Protection meets the fourth element of claim 21 of the '903 Patent that recites "taking action, by the kernel-level security agent, based at least

on one of the filtered events, wherein taking the action includes communicating, by a communications module of the kernel-level security agent, with one or more remote systems, the communications module being implemented at the kernel-level." *See, e.g.*:



(Ex. E at 8.)

| Policies | Policies define the behavior of SecureAnywhere on the endpoints, such as when it runs a scan and how it blocks potential threats. |
|---|---|

(Ex. D at 37.)

## Realtime Shield Settings

The Realtime shield blocks known threats that are listed in Webroot's threat definitions and community database. If the shield detects a suspicious file, it opens an alert and prompts you to block or allow the item. If it detects a known threat, it immediately blocks and quarantines the item before it causes damage to the endpoint or steals its information.

(Ex. D at 267.)

39.     As another example, claim 23 of the '903 Patent recites:

23. The computer-implemented method of claim 21, wherein the communicating comprises informing a remote security system of the filtered events.

40.     Webroot's SecureAnywhere/Endpoint Protection meets claim 23 of the '903 Patent. *See, e.g.*:



(Ex. E at 8.)

## About Dwell Time

Webroot has the smallest, lightest least intrusive agent on the market with multiple protection mechanisms on the agent, which provide incredible protection against the latest threats.

On our Webroot Intelligence Network, we process millions of events a day to better improve the efficacy in the solution from a detection perspective. However, as we do not, nor can anyone in the industry, catch every piece of malware on the device at first sight, although Webroot does a very good job at this.

In 2014, Gartner Magic Quadrant named Webroot as the *only* vendor with the ability to see Dwell Time.

We continue to introduce more forensic-like capabilities to ensure our customers have as much context around malicious events as possible, without the noise associated with other event-based solutions.

(Ex. D at 207.)

41.    On information and belief, Counterclaim-Defendants have directly infringed and continue to directly infringe at least claims 21 and 23 of the '903 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and importing into the United States Webroot's SecureAnywhere/Endpoint Protection, on or after the issuance date of the patent. On information and belief, Counterclaim-Defendants' direct infringement includes testing of Webroot's SecureAnywhere/Endpoint Protection, at least as a part of the product development process and regular maintenance. Further, Counterclaim-Defendants' offer demonstrations (including tutorial videos) which show customers how to use Webroot's SecureAnywhere/Endpoint Protection in an infringing manner. *See, e.g.*, Ex. F; *see also, e.g.*, https://vimeo.com/379866041 (Webroot Business Endpoint Protection Demo tutorial); https://vimeo.com/382636111 (Webroot Business Endpoint Protection Technical Certification-Policy Management tutorial). This is another example of Counterclaim-Defendants' direct infringement.

42.    Counterclaim-Defendants have been, and currently are, indirectly infringing at least claims 21 and 23 of the '903 Patent by inducing infringement under 35 U.S.C. § 271(b) and as contributory infringers under 35 U.S.C. § 271(c).

43.     Counterclaim-Defendant OpenText knew or should have known of the '903 Patent, because ██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ Counterclaim-Defendants have had actual knowledge of the '903 Patent since at least the filing of these Counterclaims.

44.     Counterclaim-Defendants knowingly and intentionally encourage and aid at least their end-user customers to directly infringe the '903 Patent. Counterclaim-Defendants have provided Webroot's SecureAnywhere/Endpoint Protection to their customers and instructions to use Webroot's SecureAnywhere/Endpoint Protection in an infringing manner while being on notice of its infringement thereof. *See, e.g.*, Ex. G; Ex. H; Ex. D; Ex. I. Therefore, Counterclaim-Defendants knew or should have known of the '903 Patent and of their own infringing acts, or deliberately took steps to avoid learning of those facts.

45.     On information and belief, Counterclaim-Defendants provide Webroot's SecureAnywhere/Endpoint Protection, which is sold and specifically configured to infringe the '903 Patent as described above, to end-user customers so that such customers will use Webroot's SecureAnywhere/Endpoint Protection in an infringing manner. *See, e.g.*,  Ex. G; Ex. H; Ex. D; Ex. I.

46.     Counterclaim-Defendants actively instruct customers on how to use Webroot's SecureAnywhere/Endpoint Protection, including through advertising, encouraging, installing devices for, providing support for, and/or operating Webroot's SecureAnywhere/Endpoint Protection for or on behalf their customers. *See, e.g.*, Ex. E; Ex. F; *see also, e.g.*, https://vimeo.com/379866041 (Webroot® Business Endpoint Protection Demo tutorial); https://vimeo.com/382636111 (Webroot Business Endpoint Protection Technical Certification-Policy Management tutorial).

47.     When used as instructed, Counterclaim-Defendants' customers use these products to practice the methods and use the apparatus of the '903 Patent and directly infringe at least claims 21 and 23 of the '903 Patent. Counterclaim-Defendants induce such infringement by Webroot's SecureAnywhere/Endpoint Protection and instructions to enable and facilitate infringement, knowing of the existence of the '903 Patent. On information and belief, Counterclaim-Defendants specifically intend that their actions will result in infringement of at least claims 21 and 23 of the '903 Patent, or subjectively believe that their actions will result in infringement of the '903 Patent but took deliberate actions to avoid learning of those facts, as set forth above.

48.     Counterclaim-Defendants contributorily infringe at least claims 21 and 23 of the '903 Patent by providing the Webroot's SecureAnywhere/Endpoint Protection and/or software or hardware components thereof, that embody a material part of the claimed inventions of the '903 Patent, that are known by Counterclaim-Defendants to be specifically made or adopted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. Webroot's SecureAnywhere/Endpoint Protection is specifically designed to infringe at least claims 21 and 23 of the '903 Patent, and their accused components have no substantial non-infringing uses.

49.     Counterclaim-Defendants' infringement of the '903 Patent has been and continues to be willful, and Counterclaim-Defendants' conduct renders this case exceptional under 35 U.S.C. § 285. As discussed above, Counterclaim-Defendants knew of or should have known of the '903 Patent because ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Counterclaim-Defendants have had actual knowledge of the '903 Patent since at least the filing of these Counterclaims. Thereafter, as discussed above in more detail, Counterclaim-Defendants infringed the '903 Patent. Based on their prior knowledge, Counterclaim-Defendants knew, or should have known, that this conduct amounted to infringement of the '903 Patent.

50.     Additional allegations regarding Counterclaim-Defendants' knowledge of the '903 Patent and willful infringement will likely have further evidentiary support after a reasonable opportunity for discovery.

51.     CrowdStrike is entitled to recover from Counterclaim-Defendants all damages that CrowdStrike has sustained as a result of Counterclaim-Defendants' infringement of the '903 Patent, including without limitation lost profits and no less than a reasonable royalty. An injunction is also necessary in this case in view of Counterclaim-Defendants' past and ongoing infringement of one or more claims of the '903 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States, which will otherwise result in irreparable harm to CrowdStrike.

## SECOND COUNT
### (Infringement by Counterclaim-Defendants of U.S. Patent No. 9,904,784)

52.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

53.     Counterclaim-Defendants have infringed and continue to infringe one or more claims of the '784 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court. CrowdStrike will continue to suffer irreparable harm unless this Court enjoins Counterclaim-Defendants, their agents, employees, representatives, and all others acting in concert with Counterclaim-Defendants from infringing the '784 Patent.

54.     As set forth in detail below (and the corresponding Exhibits thereto), Webroot's SecureAnywhere/Endpoint Protection and Webroot's Intelligence Network/BrightCloud (collectively the "Accused Webroot Products") infringe at least claims 1 and 2 of the '903 Patent.

55.     Claim 1 of the '784 Patent recites:

1. A computing system comprising:

> at least one memory configured to store a situational model and computer-executable instructions of a kernel-level security agent; and

> one or more processors that, upon executing the computer-executable instructions, perform operations comprising:

> observing a first event associated with one or more processes executing on the computing system;

> accessing, from a kernel mode of the computing system, the situational model;

> determining that the first event passes a first filter;

> updating the situational model based at least in part on the first event to provide an updated situational model;

observing a second event associated with one or more processes executing on the computing system;

determining that the second event passes a second filter based at least in part on the updated situational model;

determining a preventative action to take based on at least one of the second event and the updated situational model; and

performing the preventative action.

56.    To the extent the preamble is considered limiting, the Accused Webroot Products

meet the preamble of claim 1 of the '784 Patent. *See, e.g.*:

## WSA Business - Endpoint Protection Admin Guide Overview

Webroot SecureAnywhere™ Endpoint Protection secures your enterprise from malware and other threats by combining Webroot's behavior recognition technology with cloud computing. Endpoint Protection includes a Management Portal, also called an Admin Console, which is a centralized website used to view and manage your endpoints.

An endpoint can be any Windows corporate workstation, such as a PC, laptop, server, or virtual server. You can deploy SecureAnywhere software to these endpoints within seconds, protecting users immediately. Once SecureAnywhere runs a scan on the endpoints, it reports their status into the Management Portal.

(Ex. D at 2.)



The Webroot BrightCloud® Threat Intelligence Platform– the most powerful real-time threat analysis engine in the world

(Ex. G at 3.)

57.     The Accused Webroot Products meet the first element of claim 1 of the '784 Patent that recites "at least one memory configured to store a situational model and computer-executable instructions of a kernel-level security agent." *See, e.g.*:



(Ex. E at 8.)

## Infrared

Infrared is a multi-layer defense incorporating several aspects of BrightCloud Threat Intelligence to help thwart threats early on in their lifecycle – often before a threat researcher sees a single sample. It looks at the reputation of the websites an individual visits and uses BrightCloud Threat Intelligence to determine their risk level. If the user commonly visits low-reputation websites, then the endpoint goes into a state of heightened awareness and closely interrogates any new files or processes that are introduced into their system. Infrared also interprets user behaviors and the overall safety level of the user. So, if a user is classified as "high risk", Webroot then dynamically tunes malware prevention to that user, while preventing false positives for less risky users.

(Ex. G at 4.)

| | |
|---|---|
| **Favor low memory usage over fast scanning** | Reduces RAM usage in the background by using less memory during scans, but scans will also run a bit slower. |
| | Deselect this option to run faster scans and use more memory. |
| | This setting applies only to PC endpoints. |

(Ex. D at 259.)

## Installing on Terminal (RDS) Servers and Citrix XenApp

When installed on a Terminal server (RDS server) or Citrix XenApp for desktop/session brokering or hosted shared desktops, the WSA agent protects the environment by sharing its kernel module across sessions and provides a user process for each. The Webroot Management console displays the hosting server and each session as a combined single entry or device for reporting and management. The WSA agent does not support being streamed via application visualization.

(Ex. D at 128.)

58.     The Accused Webroot Products meet the second element of claim 1 of the '784 Patent that recites "one or more processors that, upon executing the computer-executable instructions, perform operations comprising." *See, e.g.*:



(Ex. E at 8.)

| System Pack | The number of the service pack for the operating system. |
|---|---|
| System Type | Either 32-bit or 64-bit. |

(Ex. D at 49.)

59.     The Accused Webroot Products meet the third element of claim 1 of the '784 Patent that recites "observing a first event associated with one or more processes executing on the computing system." *See, e.g.*:

| | |
|---|---|
| **First Seen** | The date and time when this event was first detected. |
| **Last Seen** | The date and time when this event was last detected. |

(Ex. D at 408.)

60.    The Accused Webroot Products meet the fourth element of claim 1 of the '784

Patent that recites "accessing, from a kernel mode of the computing system, the situational model."

*See, e.g.*:

### Infrared

Infrared is a multi-layer defense incorporating several aspects of
BrightCloud Threat Intelligence to help thwart threats early on in their
lifecycle – often before a threat researcher sees a single sample. It looks
at the reputation of the websites an individual visits and uses BrightCloud
Threat Intelligence to determine their risk level. If the user commonly visits
low-reputation websites, then the endpoint goes into a state of heightened
awareness and closely interrogates any new files or processes that are
introduced into their system. Infrared also interprets user behaviors and
the overall safety level of the user. So, if a user is classified as "high risk",
Webroot then dynamically tunes malware prevention to that user, while
preventing false positives for less risky users.

(Ex. G at 4.)

## Installing on Terminal (RDS) Servers and Citrix XenApp

When installed on a Terminal server (RDS server) or Citrix XenApp for desktop/session brokering or hosted
shared desktops, the WSA agent protects the environment by sharing its kernel module across sessions and
provides a user process for each. The Webroot Management console displays the hosting server and each
session as a combined single entry or device for reporting and management. The WSA agent does not support
being streamed via application visualization.

(Ex. D at 128.)

61.    The Accused Webroot Products meet the fifth element of claim 1 of the '784 Patent

that recites "determining that the first event passes a first filter." *See, e.g.*:



(Ex. E at 8.)

## Infrared

Infrared is a multi-layer defense incorporating several aspects of BrightCloud Threat Intelligence to help thwart threats early on in their lifecycle – often before a threat researcher sees a single sample. It looks at the reputation of the websites an individual visits and uses BrightCloud Threat Intelligence to determine their risk level. If the user commonly visits low-reputation websites, then the endpoint goes into a state of heightened awareness and closely interrogates any new files or processes that are introduced into their system. Infrared also interprets user behaviors and the overall safety level of the user. So, if a user is classified as "high risk", Webroot then dynamically tunes malware prevention to that user, while preventing false positives for less risky users.

(Ex. G at 4.)



(Ex. D at 517.)



(Ex. D at 37.)

62.    The Accused Webroot Products meet the sixth element of claim 1 of the '784 Patent

that recites "updating the situational model based at least in part on the first event to provide an

updated situational model." *See, e.g.*:



(Ex. E at 8.)

## Infrared

Infrared is a multi-layer defense incorporating several aspects of BrightCloud Threat Intelligence to help thwart threats early on in their lifecycle – often before a threat researcher sees a single sample. It looks at the reputation of the websites an individual visits and uses BrightCloud Threat Intelligence to determine their risk level. If the user commonly visits low-reputation websites, then the endpoint goes into a state of heightened awareness and closely interrogates any new files or processes that are introduced into their system. Infrared also interprets user behaviors and the overall safety level of the user. So, if a user is classified as "high risk", Webroot then dynamically tunes malware prevention to that user, while preventing false positives for less risky users.

(Ex. G at 4.)



The Webroot BrightCloud® Threat Intelligence Platform– the most powerful real-time threat analysis engine in the world

(Ex. G at 3.)

63.    The Accused Webroot Products meet the seventh element of claim 1 of the '784 Patent that recites "observing a second event associated with one or more processes executing on the computing system." *See, e.g.*:



(Ex. E at 8.)

## Infrared

Infrared is a multi-layer defense incorporating several aspects of BrightCloud Threat Intelligence to help thwart threats early on in their lifecycle – often before a threat researcher sees a single sample. It looks at the reputation of the websites an individual visits and uses BrightCloud Threat Intelligence to determine their risk level. If the user commonly visits low-reputation websites, then the endpoint goes into a state of heightened awareness and closely interrogates any new files or processes that are introduced into their system. Infrared also interprets user behaviors and the overall safety level of the user. So, if a user is classified as "high risk", Webroot then dynamically tunes malware prevention to that user, while preventing false positives for less risky users.

(Ex. G at 4.)

| **First Seen** | The date and time when this event was first detected. |
|---|---|
| **Last Seen** | The date and time when this event was last detected. |

(Ex. D at 408.)

64.     The Accused Webroot Products meet the eighth element of claim 1 of the '784 Patent that recites "determining that the second event passes a second filter based at least in part on the updated situational model." *See, e.g.*:



(Ex. E at 8.)

**Infrared**

Infrared is a multi-layer defense incorporating several aspects of BrightCloud Threat Intelligence to help thwart threats early on in their lifecycle – often before a threat researcher sees a single sample. It looks at the reputation of the websites an individual visits and uses BrightCloud Threat Intelligence to determine their risk level. If the user commonly visits low-reputation websites, then the endpoint goes into a state of heightened awareness and closely interrogates any new files or processes that are introduced into their system. Infrared also interprets user behaviors and the overall safety level of the user. So, if a user is classified as "high risk", Webroot then dynamically tunes malware prevention to that user, while preventing false positives for less risky users.

(Ex. G at 4.)



(Ex. D at 517.)

65.     The Accused Webroot Products meet the ninth element of claim 1 of the '784 Patent that recites "determining a preventative action to take based on at least one of the second event and the updated situational model." *See, e.g.*:



(Ex. E at 8.)

### Infrared

Infrared is a multi-layer defense incorporating several aspects of BrightCloud Threat Intelligence to help thwart threats early on in their lifecycle – often before a threat researcher sees a single sample. It looks at the reputation of the websites an individual visits and uses BrightCloud Threat Intelligence to determine their risk level. If the user commonly visits low-reputation websites, then the endpoint goes into a state of heightened awareness and closely interrogates any new files or processes that are introduced into their system. Infrared also interprets user behaviors and the overall safety level of the user. So, if a user is classified as "high risk", Webroot then dynamically tunes malware prevention to that user, while preventing false positives for less risky users.

(Ex. G at 4.)

| | |
|---|---|
| **Policies** | Policies define the behavior of SecureAnywhere on the endpoints, such as when it runs a scan and how it blocks potential threats. |

(Ex. D at 37.)

## Implementing Policies

When you first configured Endpoint Protection, you selected one of its default policies. A policy defines the SecureAnywhere settings on endpoints, such as the scan schedule and shielding behavior.

You can continue to use your selected default policy or you can define more policies and assign them to endpoints. For example, you might want to give system administrators more control than you would other employees. In that case, you could create a new policy for administrators and keep everyone else on the default policy.

(Ex. D at 215.)

## Realtime Shield Settings

The Realtime shield blocks known threats that are listed in Webroot's threat definitions and community database. If the shield detects a suspicious file, it opens an alert and prompts you to block or allow the item. If it detects a known threat, it immediately blocks and quarantines the item before it causes damage to the endpoint or steals its information.

(Ex. D at 267.)

66.     The Accused Webroot Products meet the tenth element of claim 1 of the '784 Patent that recites "performing the preventative action." *See, e.g.*:

| Policies | Policies define the behavior of SecureAnywhere on the endpoints, such as when it runs a scan and how it blocks potential threats. |
|---|---|

(Ex. D at 37.)

## Implementing Policies

When you first configured Endpoint Protection, you selected one of its default policies. A policy defines the SecureAnywhere settings on endpoints, such as the scan schedule and shielding behavior.

You can continue to use your selected default policy or you can define more policies and assign them to endpoints. For example, you might want to give system administrators more control than you would other employees. In that case, you could create a new policy for administrators and keep everyone else on the default policy.

(Ex. D at 215.)

## Realtime Shield Settings

The Realtime shield blocks known threats that are listed in Webroot's threat definitions and community database. If the shield detects a suspicious file, it opens an alert and prompts you to block or allow the item. If it detects a known threat, it immediately blocks and quarantines the item before it causes damage to the endpoint or steals its information.

(Ex. D at 267.)

67.     As another example, claim 2 of the '784 Patent recites:

2. The computing system of claim 1, the operations further comprising tracking attributes or behaviors of one or more objects or processes of the computing system in the situational model.

68.     The Accused Webroot Products meet claim 2 of the '784 Patent. *See, e.g.*:



(Ex. E at 8.)

**Infrared**

Infrared is a multi-layer defense incorporating several aspects of BrightCloud Threat Intelligence to help thwart threats early on in their lifecycle – often before a threat researcher sees a single sample. It looks at the reputation of the websites an individual visits and uses BrightCloud Threat Intelligence to determine their risk level. If the user commonly visits low-reputation websites, then the endpoint goes into a state of heightened awareness and closely interrogates any new files or processes that are introduced into their system. Infrared also interprets user behaviors and the overall safety level of the user. So, if a user is classified as "high risk", Webroot then dynamically tunes malware prevention to that user, while preventing false positives for less risky users.

(Ex. G at 4.)

     69.    On information and belief, Counterclaim-Defendants have directly infringed and continue to directly infringe at least claims 1 and 2 of the '784 Patent pursuant to 35 U.S.C. §

271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and importing into the United States the Accused Webroot Products, on or after the issuance date of the patent. On information and belief, Counterclaim-Defendants' direct infringement includes testing of the Accused Webroot Products, at least as a part of the product development process and regular maintenance. Further, Counterclaim-Defendants have offered demonstrations (including tutorial videos) that show customers how to use the Accused Webroot Products in an infringing manner. *See, e.g.*, Ex. F; *see also, e.g.*, https://vimeo.com/379866041 (Webroot® Business Endpoint Protection Demo tutorial); https://vimeo.com/382636111 (Webroot Business Endpoint Protection Technical Certification- Policy Management tutorial); https://vimeo.com/623694857?utm_campaign=5250933&utm_source=affiliate&utm_channel=af filiate&cjevent=b0014a96d07211ec806503830a82b821&clickid=b0014a96d07211ec806503830 a82b821 (BrightCloud Cloud Service Intelligence Demo tutorial). This is another example of Counterclaim-Defendants' direct infringement.

70.     Counterclaim-Defendants have been, and currently are, indirectly infringing at least claims 1 and 2 of the '784 Patent by inducing infringement under 35 U.S.C. § 271(b) and as contributory infringers under 35 U.S.C. § 271(c).

71.     Counterclaim-Defendant OpenText knew or should have known of the '784 Patent, because ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Counterclaim-Defendants have had actual

knowledge of the '784 Patent since at least the filing of these Counterclaims.

72.     Counterclaim-Defendants knowingly and intentionally encourage and aid at least

their end-user customers to directly infringe the '784 Patent. Counterclaim-Defendants have

provided the Accused Webroot Products to their customers and instructions to use the Accused

Webroot Products in an infringing manner while being on notice of its infringement thereof. *See,*

*e.g.*, Ex. G; Ex. J; Ex. H; Ex. D; Ex. I. Therefore, Counterclaim-Defendants knew or should have

known of the '784 Patent and of their own infringing acts, or deliberately took steps to avoid

learning of those facts.

73.     On information and belief, Counterclaim-Defendants provide the Accused Webroot

Products, which are sold and specifically configured to infringe the '784 Patent as described above,

to end-user customers so that such customers will use the Accused Webroot Products in an

infringing manner. *See, e.g.*, Ex. G; Ex. J; Ex. H; Ex. D; Ex. I.

74.     Counterclaim-Defendants actively instruct customers on how to use the Accused

Webroot Products, including through advertising, encouraging, installing devices for, providing

support for, and/or operating the Accused Webroot Products for or on behalf their customers. *See,*

*e.g.*, Ex. E; Ex. F; Ex. J; *see also, e.g.*, https://vimeo.com/379866041 (Webroot Business Endpoint

Protection Demo tutorial); https://vimeo.com/382636111 (Webroot Business Endpoint Protection

Technical        Certification-        Policy        Management        tutorial);

https://vimeo.com/623694857?utm_campaign=5250933&utm_source=affiliate&utm_channel=af

filiate&cjevent=b0014a96d07211ec806503830a82b821&clickid=b0014a96d07211ec806503830

a82b821 (BrightCloud Cloud Service Intelligence Demo tutorial).

75.     When used as instructed, Counterclaim-Defendants' customers use these products to use the apparatus of the '784 Patent and directly infringe at least claims 1 and 2 of the '784 Patent. Counterclaim-Defendants induce such infringement by providing the Accused Webroot Products and instructions to enable and facilitate infringement, knowing of the existence of the '784 Patent. On information and belief, Counterclaim-Defendants specifically intend that their actions will result in infringement of at least claims 1 and 2 of the '784 Patent, or subjectively believe that their actions will result in infringement of the '784 Patent but took deliberate actions to avoid learning of those facts, as set forth above.

76.     Counterclaim-Defendants contributorily infringe at least claims 1 and 2 of the '784 Patent by providing the Accused Webroot Products and/or software or hardware components thereof, that embody a material part of the claimed inventions of the '784 Patent, that are known by Counterclaim-Defendants to be specifically made or adopted for use in an infringing manner, and are not staple articles with substantial non-infringing uses. The Accused Webroot Products are specifically designed to infringe at least claims 1 and 2 of the '784 Patent, and their accused components have no substantial non-infringing uses.

77.     Counterclaim-Defendants' infringement of the '784 Patent has been and continues to be willful, and Counterclaim-Defendants' conduct renders this case exceptional under 35 U.S.C. § 285. As discussed above, Counterclaim-Defendants knew of or should have known of the '784 Patent because ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████ Counterclaim-Defendants have had actual knowledge of the '784 Patent since at least the filing of these Counterclaims. Thereafter, as discussed above in more detail, Counterclaim-Defendants infringed the '784 Patent. Based on their prior knowledge, Counterclaim-Defendants knew, or should have known, that this conduct amounted to infringement of the '784 Patent.

78.     Additional allegations regarding Counterclaim-Defendants' knowledge of the '784 Patent and willful infringement will likely have further evidentiary support after a reasonable opportunity for discovery.

79.     CrowdStrike is entitled to recover from Counterclaim-Defendants all damages that CrowdStrike has sustained as a result of Counterclaim-Defendants' infringement of the '784 Patent, including without limitation lost profits and no less than a reasonable royalty. An injunction is also necessary in this case in view of Counterclaim-Defendants' past and ongoing infringement of one or more claims of the '784 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States, which will otherwise result in irreparable harm to CrowdStrike.

**THIRD COUNT**
(Declaration of Non-Infringement of U.S. Patent No. 8,418,250)

80.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

81.     Counterclaim-Defendants' Complaint alleges that CrowdStrike infringes at least claim 1 of the '250 Patent even though CrowdStrike has not infringed, contributed to the infringement, or induced the infringement of claim 1 or any other claim of the '250 Patent. CrowdStrike denies these claims of infringement and believes that the Complaint has been filed without good cause for believing the allegations to be true. In particular, Counterclaim-

Defendants' Complaint fails to articulate a sufficient basis for alleging that CrowdStrike infringes, at least because under any reasonable interpretation of the claims, CrowdStrike's accused products do not use a "base computer" and likewise do not "run[] said object on at least one of the remote computers."

82.     An actual, continuing and justiciable controversy exists between CrowdStrike and Counterclaim-Defendants as to CrowdStrike's non-infringement of all claims of then '250 Patent as evidenced by Counterclaim-Defendants' Complaint and CrowdStrike's Answer, as filed on March 4, 2022. Absent a declaration of non-infringement, Counterclaim-Defendants will continue to wrongfully assert the '250 Patent against CrowdStrike and will continue to cause CrowdStrike injury and damage.

83.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, CrowdStrike requests a judicial determination and declaration that CrowdStrike does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '250 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

**FOURTH COUNT**
(Declaration of Non-Infringement of U.S. Patent No. 8,726,389)

84.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

85.     Counterclaim-Defendants' Complaint alleges that CrowdStrike infringes at least claim 1 of the '389 Patent even though CrowdStrike has not infringed, contributed to the infringement, or induced the infringement of claim 1 or any other claim of the '389 Patent. CrowdStrike denies these claims of infringement and believes that the Complaint has been filed without good cause for believing the allegations to be true. In particular, Counterclaim-Defendants' Complaint fails to articulate a sufficient basis for alleging that CrowdStrike infringes,

at least because under any reasonable interpretation of the claims, CrowdStrike's accused products do not use a "base computer."

86.     An actual, continuing and justiciable controversy exists between CrowdStrike and Counterclaim-Defendants as to CrowdStrike's non-infringement of all claims of then '389 Patent as evidenced by Counterclaim-Defendants' Complaint and CrowdStrike's Answer, as filed on March 4, 2022. Absent a declaration of non-infringement, Counterclaim-Defendants will continue to wrongfully assert the '389 Patent against CrowdStrike, and will continue to cause CrowdStrike injury and damage.

87.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, CrowdStrike requests a judicial determination and declaration that CrowdStrike does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '389 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

**FIFTH COUNT**
(Declaration of Non-Infringement of U.S. Patent No. 9,578,045)

88.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

89.     Counterclaim-Defendants' Complaint alleges that CrowdStrike infringes at least claim 1 of the '045 Patent even though CrowdStrike has not infringed, contributed to the infringement, or induced the infringement of claim 1 or any other claim of the '045 Patent. CrowdStrike denies these claims of infringement and believes that the Complaint has been filed without good cause for believing the allegations to be true. In particular, Counterclaim-Defendants' Complaint fails to articulate a sufficient basis for alleging that CrowdStrike infringes, at least because under any reasonable interpretation of the claims, CrowdStrike's accused products do not "assembl[e] an event line."

90.     An actual, continuing and justiciable controversy exists between CrowdStrike and Counterclaim-Defendants as to CrowdStrike's non-infringement of all claims of then '045 Patent as evidenced by Counterclaim-Defendants' Complaint and CrowdStrike's Answer, as filed on March 4, 2022. Absent a declaration of non-infringement, Counterclaim-Defendants will continue to wrongfully assert the '045 Patent against CrowdStrike, and will continue to cause CrowdStrike injury and damage.

91.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., CrowdStrike requests a judicial determination and declaration that CrowdStrike does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '045 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

**SIXTH COUNT**
(Declaration of Non-Infringement of U.S. Patent No. 10,257,224)

92.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

93.     Counterclaim-Defendants' Complaint alleges that CrowdStrike infringes at least claim 1 of the '224 Patent even though CrowdStrike has not infringed, contributed to the infringement, or induced the infringement of claim 1 or any other claim of the '224 Patent. CrowdStrike denies these claims of infringement and believes that the Complaint has been filed without good cause for believing the allegations to be true. In particular, Counterclaim-Defendants' Complaint fails to articulate a sufficient basis for alleging that CrowdStrike infringes, at least because under any reasonable interpretation of the claims, CrowdStrike's accused products do not "generat[e] an event line."

94.     An actual, continuing and justiciable controversy exists between CrowdStrike and Counterclaim-Defendants as to CrowdStrike's non-infringement of all claims of then '224 Patent

as evidenced by Counterclaim-Defendants' Complaint and CrowdStrike's Answer, as filed on

March 4, 2022. Absent a declaration of non-infringement, Counterclaim-Defendants will continue

to wrongfully assert the '224 Patent against CrowdStrike, and will continue to cause CrowdStrike

injury and damage.

95.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

CrowdStrike requests a judicial determination and declaration that CrowdStrike does not and has

not infringed, contributed to the infringement of, or induced infringement of any claim of the '224

Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

**SEVENTH COUNT**
(Declaration of Non-Infringement of U.S. Patent No. 10,284,591)

96.     CrowdStrike realleges and incorporates by reference the allegations set forth in the

foregoing paragraphs.

97.     Counterclaim-Defendants' Complaint alleges that CrowdStrike infringes at least

claim 1 of the '591 Patent even though CrowdStrike has not infringed, contributed to the

infringement, or induced the infringement of claim 1 or any other claim of the '591 Patent.

CrowdStrike denies these claims of infringement and believes that the Complaint has been filed

without good cause for believing the allegations to be true. In particular, Counterclaim-

Defendants' Complaint fails to articulate a sufficient basis for alleging that CrowdStrike infringes,

at least because under any reasonable interpretation of the claims, CrowdStrike's accused products

do not "execut[e] stack walk processing."

98.     An actual, continuing and justiciable controversy exists between CrowdStrike and

Counterclaim-Defendants as to CrowdStrike's non-infringement of all claims of then '591 Patent

as evidenced by Counterclaim-Defendants' Complaint and CrowdStrike's Answer, as filed on

March 4, 2022. Absent a declaration of non-infringement, Counterclaim-Defendants will continue

to wrongfully assert the '591 Patent against CrowdStrike, and will continue to cause CrowdStrike injury and damage.

99.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, CrowdStrike requests a judicial determination and declaration that CrowdStrike does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '591 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

**EIGHTH COUNT**
<u>(Declaration of Non-Infringement of U.S. Patent No. 10,859,844)</u>

100.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

101.     Counterclaim-Defendants' Complaint alleges that CrowdStrike infringes at least claim 1 of the '844 Patent even though CrowdStrike has not infringed, contributed to the infringement, or induced the infringement of claim 1 or any other claim of the '844 Patent. CrowdStrike denies these claims of infringement and believes that the Complaint has been filed without good cause for believing the allegations to be true. In particular, Counterclaim-Defendants' Complaint fails to articulate a sufficient basis for alleging that CrowdStrike infringes, at least because under any reasonable interpretation of the claims, CrowdStrike's accused products do not use "support vector processing."

102.     An actual, continuing and justiciable controversy exists between CrowdStrike and Counterclaim-Defendants as to CrowdStrike's non-infringement of all claims of then '844 Patent as evidenced by Counterclaim-Defendants' Complaint and CrowdStrike's Answer, as filed on March 4, 2022. Absent a declaration of non-infringement, Counterclaim-Defendants will continue to wrongfully assert the '844 Patent against CrowdStrike, and will continue to cause CrowdStrike injury and damage.

103.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, CrowdStrike requests a judicial determination and declaration that CrowdStrike does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '844 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

**NINTH COUNT**
**(Declaration of Invalidity of U.S. Patent No. 8,418,250)**

104.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

105.     Due to Counterclaim-Defendants' filing of the Complaint, an actual controversy exists between CrowdStrike and Counterclaim-Defendants as to the validity of the '250 Patent.

106.     The claims of the '250 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103 and/or 112.

107.     By way of example, the asserted claims of the '250 Patent are invalid based on, for instance, one or more of United States Patent No. 7,900,194 and the prior art references listed on the face of the patents.

108.     Under the Federal Declaratory Judgment Act, 28, U.S.C. § 2202 *et seq.*, CrowdStrike requests a judicial determination and declaration that the claims of the '250 Patent are invalid.

**TENTH COUNT**
**(Declaration of Invalidity of U.S. Patent No. 8,726,389)**

109.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

110.   Due to Counterclaim-Defendants' filing of the Complaint, an actual controversy exists between CrowdStrike and Counterclaim-Defendants as to the validity of the '389 Patent.

111.   The claims of the '389 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103 and/or 112.

112.   By way of example, the asserted claims of the '389 Patent are invalid based on, for instance, one or more of United States Patent Nos. 7,900,194 and 7,594,272 and the prior art references listed on the face of the patents.

113.   Under the Federal Declaratory Judgment Act, 28, U.S.C. § 2202 *et seq.*, CrowdStrike requests a judicial determination and declaration that the claims of the '389 Patent are invalid.

**ELEVENTH COUNT**
<u>(Declaration of Invalidity of U.S. Patent No. 9,578,045)</u>

114.   CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

115.   Due to Counterclaim-Defendants' filing of the Complaint, an actual controversy exists between CrowdStrike and Counterclaim-Defendants as to the validity of the '045 Patent.

116.   The claims of the '045 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103 and/or 112.

117.   By way of example, the asserted claims of the '045 Patent are invalid based on, for instance, one or more of United States Patent No. 9,292,881, prior art systems such as McAfee Total Protection for Endpoint—Enterprise Edition and the prior art references listed on the face of the patents.

118.     Under the Federal Declaratory Judgment Act, 28, U.S.C. § 2202 *et seq.*, CrowdStrike requests a judicial determination and declaration that the claims of the '045 Patent are invalid.

## TWELFTH COUNT
### (Declaration of Invalidity of U.S. Patent No. 10,257,224)

119.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

120.     Due to Counterclaim-Defendants' filing of the Complaint, an actual controversy exists between CrowdStrike and Counterclaim-Defendants as to the validity of the '224 Patent.

121.     The claims of the '224 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103 and/or 112.

122.     By way of example, the asserted claims of the '224 Patent are invalid based on, for instance, one or more of United States Patent No. 9,292,881 and U.S. Pat. Pub. No. 2010/0077481, prior art systems such as McAfee Total Protection for Endpoint—Enterprise Edition and the prior art references listed on the face of the patents.

123.     Under the Federal Declaratory Judgment Act, 28, U.S.C. § 2202 *et seq.*, CrowdStrike requests a judicial determination and declaration that the claims of the '224 Patent are invalid.

## THIRTEENTH COUNT
### (Declaration of Invalidity of U.S. Patent No. 10,284,591)

124.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

125.     Due to Counterclaim-Defendants' filing of the Complaint, an actual controversy exists between CrowdStrike and Counterclaim-Defendants as to the validity of the '591 Patent.

126.     The claims of the '591 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103 and/or 112.

127.     By way of example, the asserted claims of the '591 Patent are invalid based on, for instance, one or more of United States Patent No. 7,971,255 and the prior art references listed on the face of the patents.

128.     Under the Federal Declaratory Judgment Act, 28, U.S.C. § 2202 *et seq*., CrowdStrike requests a judicial determination and declaration that the claims of the '591 Patent are invalid.

**FOURTEENTH COUNT**
(Declaration of Invalidity of U.S. Patent No. 10,859,844)

129.     CrowdStrike realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

130.     Due to Counterclaim-Defendants' filing of the Complaint, an actual controversy exists between CrowdStrike and Counterclaim-Defendants as to the validity of the '844 Patent.

131.     The claims of the '844 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103 and/or 112.

132.     By way of example, the asserted claims of the '844 Patent are invalid based on, for instance, one or more of United States Patent Pub. No. 2003/0065926 and the prior art references listed on the face of the patents.

133.    Under the Federal Declaratory Judgment Act, 28, U.S.C. § 2202 *et seq*., CrowdStrike requests a judicial determination and declaration that the claims of the '844 Patent are invalid.

## PRAYER FOR RELIEF

For these reasons, CrowdStrike respectfully prays for the following relief:

1.    that the Court dismiss Counterclaim-Defendants' claims in their Complaint against CrowdStrike with prejudice, and enter judgment on the Complaint in favor of CrowdStrike and against Counterclaim-Defendants;

2.    that the Court deny all relief requested by Counterclaim-Defendants in their Complaint;

3.    that the Court enter a judgment in favor of CrowdStrike and against Counterclaim-Defendants on CrowdStrike's Counterclaims;

4.    that the Court find that Counterclaim-Defendants have willfully infringed CrowdStrike's patents, award CrowdStrike an amount of damages to be determined through trial by jury, together with pre-judgment and post-judgment interest;

5.    that this Court grant CrowdStrike ongoing royalties for all continued post-trial infringement by Counterclaim-Defendants;

6.    that the Court grant CrowdStrike all reasonable attorneys' fees, experts' fees, and costs;

7.    that this Court enjoin Counterclaim-Defendants from infringing any of the Asserted Counterclaim Patents;

8.    that the Court, if it declines to enjoin Counterclaim-Defendants from infringing any of the Asserted Counterclaim Patents, award damages for future infringement in lieu of an injunction; and

9.       that the Court grant CrowdStrike such further relief as the Court deems proper and just.

## DEMAND FOR JURY TRIAL

Defendants and Counterclaim Plaintiff hereby demand trial by jury on all issues so triable that have been raised by Counterclaim-Defendants' Complaint or by CrowdStrike's Answer, Affirmative Defenses, and Counterclaims.

Dated:  May 13, 2022

Respectfully submitted,

David Nelson
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
191 N Upper Wacker Dr #2700
Chicago, IL 60606
Tel.: (312) 705-7400
Fax: (312) 705-7401

Victoria F. Maroulis
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel.: (650) 801-5000
Fax: (650) 801-5100

Deepa Acharya
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
Fax: (202) 538-8100

Steven Callahan
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Tel.: (214) 521-6400
Fax: (214) 764-8392

*Attorneys for CrowdStrike*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system and via e-mail on the date this document is filed.

Steven Callahan