██████████████████████

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

<span style="color:red">**PUBLIC VERSION**</span>

| | |
|---|---|
| WEBROOT, INC. and<br>OPEN TEXT, INC.,<br><br>       Plaintiffs,<br><br>v.<br><br>CROWDSTRIKE, INC., and<br>CROWDSTRIKE HOLDINGS, INC.<br><br>       Defendants. | CIVIL ACTION NO. 6:22-CV-00241-ADA<br><br>**JURY TRIAL DEMANDED** |
| CROWDSTRIKE, INC.,<br><br>       Counterclaim Plaintiff,<br><br>v.<br><br>WEBROOT, INC. and<br>OPEN TEXT, INC.,<br><br>       Counterclaim-Defendants. | |

**PLAINTIFFS' AND COUNTERCLAIM DEFENDANTS'**
**OPPOSITION TO DEFENDANTS' MOTION FOR INTRA-DISTRICT**
**TRANSFER TO THE AUSTIN DIVISION OF THE WESTERN DISTRICT OF TEXAS**

## **TABLE OF CONTENTS**

I. Introduction ................................................................................................................1

II. Factual Background ....................................................................................................2

    A. Relevant Parties and Non-Parties ......................................................................3

    B. Patents and Products at Issue ............................................................................4

III. Legal Standard ...........................................................................................................5

IV. Argument ...................................................................................................................5

    A. Waco is more convenient than Austin: The Private Interest Factors Weigh Against Transfer .............................................................................................................6

        1. Private Factor 1: Relative ease of access to sources of proof weighs against transfer ........................................................................................................6

        2. Private Factor 2: Availability of compulsory process to secure the attendance of witnesses is neutral .................................................................................8

        3. Private Factor 3: Cost of attendance for willing witnesses weighs against transfer ........................................................................................................8

        4. Private Factor 4: All other practical problems that make trial of a case easy, expeditious, and inexpensive weighs strongly against transfer ...................11

    B. The Public Interest Factors Favor Waco .........................................................13

        1. Public Factor 1: Administrative difficulties flowing from court congestion heavily weighs against transfer ................................................................13

        2. Public Factor 2: Local interest in having localized interests decided at home is neutral ......................................................................................................14

        3. Remaining Public Factors are Neutral .....................................................15

# **TABLE OF AUTHORITIES**

**Cases:**

*Bowmar Archery LLC v. VIP Veteran Innovative Products* LLC,
No. 1:22-cv-00346-RP (W.D. Tex.) ....................................................................13

*Concrete Support Systems, LLC v. Bond Formwork Systems, LLC et al.*,
No 1:20-cv-01150-LY (W.D. Tex.)......................................................................14

*Dali Wireless, Inc. v. Corning, Inc.*,
No. 6:20-cv-01108, 2021 WL 5316409 (W.D. Tex. Sept. 20, 2021) ........................5, 14

*In re Google LLC*,
2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ................................................7

*Hammond Dev. Int'l, Inc. v. Google LLC*,
2020 U.S. Dist. LEXIS 110984 (W.D. Tex. June 24, 2020) ......................................11

*Identity Security LLC v. Apple, Inc.*
No. 1:22-cv-00058-LY (W.D. Tex.)................................................................13, 14

*Monkeymedia, Inc. v. Amazon.Com, Inc.*,
No. 1:20-cv-00010-LY (W.D. Tex.)......................................................................13

*In re NetScout Sys., Inc.*,
2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ............................................12

*ParkerVision, Inc. v. Intel Corp.*,
No. 6:20-cv-00108, 2021 WL 401989 (W.D. Tex Jan. 26, 2021)................................13

*Parus Holdings Inc. v. LG Elecs. Inc.*,
No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)..................10

*PaSafeShare LLC v. Microsoft Corp.*,
No. 6:20-cv-397, 2021 WL 1298933 (W.D. Tex. Apr. 7, 2021) ..................5, 7, 9, 12, 15

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
No. 6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) .................................11

*In re Planned Parenthood Fed. Of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022) ..........................................................................14, 15

*RPB Safety, LLC v. Tru-Vision Plastics, Inc.*,
No. 6:18-CV-00367-ADA, 2019 WL 10349405 (W.D. Tex. Feb. 20, 2019)..................9

███████████████████████████

*Sesaco Corporation v. Equinom Ltd. et al.*
No. 1:20-cv-01053-LY (W.D. Tex.) ..........................................................................13

*Silvertson v. Clinton*,
No. 3:11–CV–0836–D, 2011 WL 4100958 (N.D. Tex. Sept. 14, 2011) .........................8

*Solas OLED Ltd. v. Apple Inc.*,
6:19-CV-00537, 2020 WL 3440956 (W.D. Tex. June 23, 2020) .................................13

*Sonrai Memory Ltd. v. Oracle Corp.*,
No. 21-cv-00116, 2022 WL 315023 (W.D. Tex. Feb 2. 2022) ...................................14

*Uniloc USA, Inc. v. Chief Architect, Inc.*,
No. 6:15-CV-1003, 2016 WL 9229319 (E.D. Tex. Dec. 2, 2016) ...............................11

*USC IP P'ship, L.P. v. Facebook, Inc.*,
No. 6:20-cv-00555, 2021 WL 860007 (W.D. Tex. March 8, 2021).................................5

*In re Volkswagen of Am.*,
545 F.3d 304 (5th Cir. 2008) ....................................................................................6

*Webroot et al. v. AO Kaspersky Lab et al.*,
No. 22-CV-00243, ECF No. 66 (Oct. 11, 2022)..........................................................3

*Webroot, Inc. et al. v. Trend Micro Inc. et al.,*
No. 6:22-cv-239-ADA, ECF No. 58 (Nov. 11, 2022) ...................................................1

*Word to Info, Inc. v. Facebook, Inc.,*
No. 3:14-cv-04387-K, 2015 WL 13870507 (N.D. Tex. Jul. 23, 2015) .........................14

*WSOU Invs., LLC v. Microsoft Corp.*,
No. 6:20-cv-465, 2021 WL 1298935 (W.D. Tex. Apr. 7, 2021).........................6, 11, 13

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)................................................................................12

Plaintiffs and Counterclaim-Defendants Webroot, Inc. ("Webroot") and Open Text, Inc. ("OTI") hereby oppose Crowdstrike, Inc. and Crowdstrike Holdings, Inc.'s (collectively, "Crowdstrike") Motion for Intra-District Transfer of Venue to the Austin Division of the Western District of Texas (ECF No. 56).

## I.    INTRODUCTION

These consolidated cases involve Webroot's claims that five defendants have infringed the same OTI/Webroot patents. Each defendant, in turn, has alleged that OTI/Webroot's products infringe one or more of its own patents. Crowdstrike's motion seeks an intra-district transfer to Austin to create a situation where infringement of the same OTI/Webroot patents by different defendants and allegations that the same OTI/Webroot accused products have infringed patents of different defendants are adjudicated by different judges in different courts.[1] CrowdStrike's motion should be denied because Waco is the center of gravity of these five consolidated cases with parties and key third parties headquartered in Dallas to the north and Austin to the south—bookending Waco—and the rest scattered between, inter alia, California, Colorado, Canada, and the UK.

Consolidated Defendant Kaspersky, with ten overlapping patents, has not moved to transfer and its deadline to do so has passed. As a result, this Court will be conducting claim construction, discovery, summary judgment, and trial on **ten of the twelve patents** asserted against Crowdstrike regardless. Judicial efficiency requires these overlapping cases be litigated together, here.

Nor does Crowdstrike demonstrate any particularized connection to Austin that could conceivably make it "clearly more convenient" than Waco. Instead, the evidence demonstrates that

---

[1]    Defendant Trend Micro has sought intra district transfer to the United States District Court for the Northern District of California thus raising the possibility that the same patents and products would be adjudicated in three different courts. *See Webroot, Inc. et al. v. Trend Micro Inc. et al.*, No. 6:22-cv-239-ADA, ECF No. 58 (Nov. 11, 2022).

Waco is more convenient. Crowdstrike identified no documents or likely trial witnesses located in Austin. All of the Accused Products (both Crowdstrike's and Counterclaim Defendants') were designed and developed elsewhere. By contrast, there is significant third-party evidence located in Waco where Crowdstrike sells and has customers using the Accused Products, making Waco the more convenient forum.

The following chart summarizing the public/private interest factors reveals that four factors weigh against transfer and the remainder are neutral, making Waco more convenient than Austin:

| Private Factors | Weight |
|---|---|
| 1. Relative ease of access to sources of proof | Against Transfer |
| 2. Availability of compulsory process | Neutral |
| 3. Cost of attendance for willing witnesses | Against Transfer |
| 4. All other practical problems | Against Transfer |
| **Public Factors** | **Weight** |
| 1. Administrative difficulties flowing from court congestion | Against Transfer |
| 2. Local interest in having localized interests decided at home | Neutral |
| 3. Familiarity of the forum with the law that will govern the case | Neutral |
| 4. Avoidance of unnecessary problems or conflict of laws | Neutral |

Accordingly, Crowdstrike's motion should be denied.

## II.     FACTUAL BACKGROUND

This case is one of five consolidated cases in this District involving numerous overlapping patents and products. As the table below demonstrates, **all of** the patents asserted against CrowdStrike are asserted against other Defendants and five patents are asserted against every defendant. And Defendant Kaspersky, with the ten overlapping patents highlighted below, has not moved to transfer and can no longer do so.

| Patent | Kaspersky | CrowdStrike | Forcepoint | Sophos | Trend Micro |
|---|---|---|---|---|---|
| U.S. 8,726,389 | X | X | X | X | X |
| U.S. 10,599,844 | X | X | X | X | X |
| U.S. 8,418,250 | X | X | | X | X |
| U.S. 9,413,721 | | | X | X | |

| Patent | Kaspersky | CrowdStrike | Forcepoint | Sophos | Trend Micro |
|---|---|---|---|---|---|
| U.S. 9,578,045 | X | X | | X | X |
| U.S. 10,257,224 | X | X | | X | X |
| U.S. 10,284,591 | X | X | | X | X |
| U.S. 8,856,505 | X | X | | X | X |
| U.S. 8,181,244 | | X | | X | X |
| U.S. 8,201,243 | X | X | X | X | X |
| U.S. 8,719,932 | X | X | X | X | X |
| U.S. 11,409,869 | X | X | X | X | X |
| U.S. 8,763,123 | | X | | X | |
| U.S. 8,438,386 | | | X | | |
| U.S. 10,025,928 | | | X | | |

Similarly, each of the Defendants has filed counterclaims totaling 21 patents. These patent infringement allegations are levied against the same Webroot products including in particular the same products that Crowdstrike accuses of infringement (*e.g.*, BrightCloud Threat Intelligence Services and Webroot SecureAnywhere). Moving this case to Austin will necessarily result in different judges rendering decisions on the same patents and products.

### A.    Relevant Parties and Non-Parties

The CrowdStrike case involves three entities: Plaintiffs and Counterclaim-Defendants Webroot and OTI; and Defendant and Counterclaim-Plaintiff Crowdstrike. *See* ECF No. 60 ("FAC") ¶¶ 18-24; *see also Webroot et al. v. AO Kaspersky Lab et al.*, No. 22-CV-00243, ECF No. 66 ("Answer"). Plaintiff and Counterclaim-Defendant Webroot was founded in 1997 in Boulder, Colorado, and is currently headquartered in Broomfield, Colorado. *See* Declaration of Paul Loomis, December 14, 2022 ("Loomis Decl.") ¶ 4. In 2010, Webroot acquired BrightCloud, a San Diego, California-based web security services provider and the initial developer of BrightCloud Threat Intelligence Services. *Id.* at ¶ 5. Plaintiff and Counterclaim-Defendant OTI is a Delaware corporation headquartered in San Mateo, California. *Id.* at ¶ 6.

Defendant and Counterclaim-Plaintiff Crowdstrike was founded in 2011 in Sunnyvale, California. *See* Hill Decl. ¶ 3; *id.* Ex. A at 4. Crowdstrike has a significant presence in the Waco Division, including four employees who reside in the Waco Division, and a partnership with the Central National Bank of Waco. *See* ECF No. 56-1, August 31, 2022 Declaration of Carlino Cecilio, ("Cecilio Decl.") at ¶¶ 14-17; *see also* Hill Decl. ¶ 4; *id.* Ex. B. Crowdstrike's research and development leadership team is located in Seattle, Washington and Sunnyvale, California, with research and development centers in Irvine, California, and Israel. *See* Hill Decl. ¶ 3; *id.* Ex. A at 14; *see also* Hill Decl. ¶ 5; *id.* Ex. C at 14. In December of 2021 Crowdstrike designated Austin, Texas as its principal executive office, but no people, jobs, or facilities were affected by the redesignation. *See* Hill Decl. ¶ 6; *id.* Ex. D.[2] Sunnyvale, California continues to serve as Crowdstrike's principal place of business. *See* Answer at ¶ 1.

## B.     Patents and Products at Issue

Webroot and OTI have asserted twelve U.S. Patents (collectively, the "Webroot Asserted Patents") against Crowdstrike. *See* FAC at ¶ 16. These patents identify inventors located in California, Illinois, Colorado, Great Britain, Italy, and Austria. *See* Webroot Asserted Patents.

There are multiple Crowdstrike products accused of infringement, including the Falcon Platform and Falcon Endpoint Protection (the "Crowdstrike Accused Products"). FAC at ¶ 15. The Crowdstrike employees responsible for designing and developing the Crowdstrike Accused Products are dispersed throughout the United States, including in California, as well as internationally. Cecilio Decl. ¶ 19. The employees identified by Crowdstrike as subject matter

---

[2]      For instance, Crowdstrike noted that while "the traditional notion of a singular headquarters is not required and may become obsolete altogether in today's transforming world," Crowdstrike is required by the Securities and Exchange Commission to "designate a principal executive office." *See* Hill Decl. ¶ 6; id. Ex. D.

experts related to the Crowdstrike Accused Products reside in California—not Texas. Mot. at 3-4.

Undermining its motion, Crowdstrike has brought patent counterclaims against certain Webroot products, asserting their own U.S. Patent Nos. 9,043,903 and 9,904,784 against Webroot SecureAnywhere ("WSA") and BrightCloud Threat Intelligence Services ("BTIS") (collectively, the "Counterclaim Accused Products"). Answer ¶ 25. BTIS was developed in San Diego, California by BrightCloud, and persons most knowledgeable about it are located in California. Loomis Decl. ¶ 12. WSA was developed by ███████████████, and persons most knowledgeable about it are located in Illinois, Colorado, and Great Britain. *Id*. at ¶ 13.

## III.   LEGAL STANDARD

"The party moving for transfer carries the burden of showing good cause." *PaSafeShare LLC v. Microsoft Corp.*, No. 6:20-cv-397, 2021 WL 1298933, at *1 (W.D. Tex. Apr. 7, 2021); *Dali Wireless, Inc. v. Corning, Inc.*, No. 6:20-cv-01108, 2021 WL 5316409, at *2 (W.D. Tex. Sept. 20, 2021) (explaining that the moving party "must show materially more than a mere preponderance of convenience, lest the standard has no real or practical meaning"). In ruling on a Section 1404(a) motion, "[the] court may 'consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party.'" *PaSafeShare*, 2021 WL 1298933, at *2.

## IV.   ARGUMENT

Crowdstrike's transfer motion should be denied because each of the factors is either neutral or weights against transfer and thus, Austin is not clearly more convenient than Waco. *See USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-cv-00555, 2021 WL 860007, at *2, 4 (W.D. Tex. March 8, 2021).

**A.    Waco is more convenient than Austin: The Private Interest Factors Weigh Against Transfer**

1.    <u>Private Factor 1</u>: Relative ease of access to sources of proof weighs against transfer

When considering the first private interest factor, the Court looks to "where documentary evidence, such as documents and physical evidence, is stored[.]" *See In re Volkswagen of Am.*, 545 F.3d 304, 316 (5th Cir. 2008). "Simply stating that there are generalized documents in a certain location, without more, carries little weight." *WSOU Invs., LLC v. Microsoft Corp.*, No. 6:20-cv-465, 2021 WL 1298935, at *3 (W.D. Tex. Apr. 7, 2021). Due to third-party evidence in Waco, and Crowdstrike's failure to identify any specific evidence in Austin, this factor weighs against transfer.

First, there is a significant amount of relevant third-party evidence located proximate to the Waco Division. For example, Crowdstrike has "partnered" with third-party Central National Bank of Waco for the deployment of numerous Crowdstrike Accused Products in the Waco Division. Hill Decl. ¶ 4; *id.* Ex. B. As a result, Crowdstrike has regular contacts in the Waco Division: the CISO at Central National Bank of Waco has reported that "Every time we've had an incident — like when somebody tries to plug in a USB drive — I receive an email from one of our dedicated CrowdStrike support team members[.]" *Id.* Webroot/OTI is not aware of any other customer with which Crowdstrike has this level of interaction with respect to the Crowdstrike Accused Products. Accordingly, the Central National Bank of Waco is expected to have important evidence regarding use of the Crowdstrike Accused Products, which will be necessary to demonstrate indirect infringement. If Crowdstrike's motion to transfer is granted, the ease of access to this source of proof would be significantly diminished. Similarly, Dallas-based Zix Corporation is a critical third-party in a case that has been consolidated with this one. *See* ECF No. 65 (consolidating this case with Case No. 22-CV-00342, where Zix is a key third-party witness).

████████████████████████████████████████████████

Second, CrowdStrike concedes that its own sources of proof are located outside of Austin. Crowdstrike admits that it maintains documents on file servers located in ████████████████ ████████████ – not Austin. *See* Mot. at 5. Crowdstrike's 30(b)(6) witnesses confirmed that Crowdstrike does not maintain a file server in Austin, and that technical documents are instead located in ████████████████████████. Hill Decl. ¶ 7; *id.* Ex. E at 76:5-7, 16-22. Transferring this case to Austin will not in any way affect the relative ease of accessing Crowdstrike's sources of proof because they are not located in Texas.

Crowdstrike attempts to cure this deficiency by pointing to sales and marketing personnel who allegedly "create documents" in Austin. Mot. at 8. But Crowdstrike identifies no such documents and does not explain why documents created by their Austin-based sales and marketing personnel would have any relevance to this case. Accordingly, the existence of sales and marketing personnel in Austin is irrelevant. *See PaSafeShare*, 2021 WL 1298933 at *3 (finding this factor neutral where the movant "argues that there are potentially relevant documents in Austin but fails to identify any such documents."). Moreover, documents created in Crowdstrike's Austin office would still be stored on Crowdstrike's file servers located in ████████████████████ ██████ – not Austin.[3]

Nor can CrowdStrike rely on the lack of Crowdstrike documents in Waco. "[T]he absence of relevant documentation in a particular venue does nothing on its own to establish that another

---

[3]      Crowdstrike cites to *In re Google*, but this does not support transferring a case based on the presence of purported "document creators" in the transferee forum. *See* Mot. at 8 (citing *In re Google LLC*, 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021). In *Google,* the Federal Circuit held that the Northern District of California was clearly more convenient where "source code and technical documents relating to the accused activities, as well as a significant number of documents relating to Google's marketing, finances, and sales, were created and are maintained in the Northern District of California." *Id.* Here, no documents (technical or otherwise) related to the patents or products are maintained in Austin, nor has CrowdStrike demonstrated that relevant sales and marketing documents were even created in Austin.

██████████████████████████████████████

requested venue is clearly more convenient." *See USC,* 2021 WL 860007, at *3. The location of Webroot/OTI's own documents also does not change this analysis. OTI and Webroot documents are maintained electronically in ████████████. *See* Loomis Decl. ¶ 9. While these electronically stored documents are ████████████████████████████████ ████████████████████████████████████████ ████████████. *See* Loomis Decl. ¶ 10.

Accordingly, because there are significant sources of third-party evidence in and/or proximate to the Waco Division, and because Crowdstrike has not identified any sources of proof in Austin, this factor favors the Waco Division and weighs against transfer.

### 2.   Private Factor 2: Availability of compulsory process to secure the attendance of witnesses is neutral

Webroot/OTI agrees that Private Factor 2 is neutral.

### 3.   Private Factor 3: Cost of attendance for willing witnesses weighs against transfer

In order to prove this factor, "the party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover." *Silvertson v. Clinton,* No. 3:11–CV–0836–D, 2011 WL 4100958, at *6 (N.D. Tex. Sept. 14, 2011). This factor weighs against transfer because (1) Crowdstrike has not actually identified key witnesses in Austin who are likely to attend trial; and (2) party witnesses located in Austin do not weigh in favor of Austin over Waco.

First, by its own admission, the Crowdstrike employees who are potentially the most knowledgeable regarding the research, development, and operation of the Crowdstrike Accused Products are Patrick McCormack, Jenny Mankin, and Sven Krasser. *See* Mot. at 3. Each of these individuals resides in California—not Austin. *Id.* Moreover, the named inventors of the Counterclaim Patents being asserted by Crowdstrike are located in Minnesota, Arizona,

Washington, D.C, and Canada—none are located in Austin. Hill Decl. ¶ 5; *id.* Ex. C at 20. None

of the Crowdstrike employees who support Mr. McCormack, Ms. Mankin, and Mr. Krasser work

in Crowdstrike's Austin office. *See* Hill Decl. ¶¶ 8-10; *id.* Ex. F-H; *see also* Hill Decl. ¶ 3; id. Ex.

A ("[Crowdstrike's] research and development leadership team is located in Seattle, Washington

and Sunnyvale, California.").

     For witnesses living outside of Texas, the Court has recognized that it is just as easy to

attend a hearing in Waco as it is in Austin. *See, e.g.*, *RPB Safety, LLC v. Tru-Vision Plastics, Inc.*,

No. 6:18-CV-00367-ADA, 2019 WL 10349405, at *4 n.5 (W.D. Tex. Feb. 20, 2019) ("Waco is as

accessible as Austin since the time to fly into Dallas and drive to Waco is relatively the same as

flying into Austin since such flights usually make a connection in Dallas."). In terms of relative

costs, "Waco would be cheaper than Austin because of Austin's high cost of living." *PaSafeShare*,

2021 WL 1298933 at *4. In fact, a trial in Waco would be less expensive, as Waco has more

affordable hotels and a lower cost of living. Hill Decl. ¶¶ 11-14; *id.* Ex. I-L.

     Crowdstrike points to a small number of Austin-based individuals, but they are irrelevant.

First, Crowdstrike nominally identified two sales and marketing employees–Greg Ellett and Sean

Slaton–residing in Austin and Bee Cave, respectively. Mot. at 4. But CrowdStrike never actually

stated that either are likely to testify at trial, and never explained why testimony from these

particular sales and marketing employees is necessary. Crowdstrike also has numerous sales and

marketing employees residing in the Waco Division, including █ with similar roles and who

work with Mr. Slaton. *See* Cecilio Decl. ¶¶ 14-15 (describing ███████████,

who live in the Waco Division). As a result, and because they are unlikely to testify at trial, Mr.

Slaton and Mr. Ellett are irrelevant to the transfer analysis.

█████████████████████████████████████

Crowdstrike's supposed "prior art witnesses" in Austin are similarly irrelevant. CrowdStrike identifies five individuals who are named co-inventors of U.S. Patent Publication Nos. 2003/0046582 and 2004/0123145 (*see* Mot. at 4-5), but never explains how they affect the transfer factors – because they do not. *See Parus Holdings Inc. v. LG Elecs. Inc*., No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *4 (W.D. Tex. Aug. 20, 2020) ("Because prior art witnesses are very unlikely to testify…the Court gives their location "minimal" weight."). Crowdstrike's invalidity contentions contain no invalidity charts using either of these publications as a primary reference, instead identifying them *en masse* as one of more than forty (40) references each that Crowdstrike *may* rely on to show obviousness. *See* Hill Decl. ¶¶ 19-22. Indeed, CrowdStrike's 30(b)(6) witness could not confirm that Crowdstrike contacted even one of these individuals. *See* Hill Decl. ¶ 7; *id.* Ex. E at 140:10-148:12. There is scant possibility that any of these allegedly Austin-based individuals are called to testify at trial.[4]

The same is true for witnesses likely to be called by Webroot/OTI. The persons most knowledgeable about the Counterclaim Accused Products, including ████████████ ██████████████████, are located in San Diego, California and Chicago, Illinois, respectively. Loomis Decl. ¶¶ 12-13. No individuals who would be called to testify regarding the Counterclaim Accused Products are located in the Austin Division. *Id.* Webroot/OTI has identified a single employee, ████████████, who may be called as a witness in this case and who works in the

---

[4]     To the extent the Court considers the existence of prior art witnesses in the transfer analysis, Webroot/OTI has identified relevant prior art witness located significantly closer and more convenient to the Waco Division. *See* Hill Decl. ¶¶ 23-24. First, Mr. Daniel Madden is the named inventor of US2006/0179484 ("Scrimsher"), one of Webroot/OTI's primary invalidity references, and resides in Coppell, Texas. *Id.* at ¶ 23. Second, Anthony Gibson is the named inventor of US2008/0016502 ("Henderson"), one of Webroot/OTI's obviousness invalidity references, and resides in Coppell, Texas. *Id.* at ¶ 24. Webroot/OTI intends to rely on Mr. Madden and Mr. Gibson to show that the Crowdstrike Asserted Patents are invalid. *Id.* at ¶¶ 23-24.

Austin Division, but ▇▇▇▇▇▇ has made clear that it is equally convenient for him to attend proceedings in this case in the Waco Division. *See* Loomis Decl. ¶ 7. No other employees in the Austin Division are expected to be called to testify at trial in this matter.

Second, even if one of Crowdstrike's Austin-based employees did ultimately attend trial, their personal convenience does not weigh in favor of transferring this case to Austin. Each of these individuals is employed by Crowdstrike, and this Court gives little weight to party witnesses. *Hammond Dev. Int'l, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 110984, at *11-12 (W.D. Tex. June 24, 2020) ("The convenience of party witnesses is given little weight."). Moreover, the 100-mile rule does not apply because the distance between the Austin and Waco courthouses is less than 100 miles. *See WSOU Invs.*, 2021 WL 1298935 at *4 ("Because the distance between Waco and Austin is less than 100 miles, there is no significant difference in cost of attendance for willing witnesses to travel and stay in Waco compared to Austin.").

In summary, the cost of attendance for willing witnesses favors Waco, not Austin, and Crowdstrike has failed to show that the cost of attending trial in Waco is greater than Austin for any relevant willing witness. Thus, this factor weighs against transfer.

### 4.   <u>Private Factor 4</u>: All other practical problems that make trial of a case easy, expeditious, and inexpensive weighs strongly against transfer

This factor weighs strongly against transfer because of the significant inefficiencies and delays that would result from separating this case from the consolidated group of five cases involving the same Asserted Patents and the same Accused Products.

"Multiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer." *Uniloc USA, Inc. v. Chief Architect, Inc.*, No. 6:15-CV-1003, 2016 WL 9229319, at *5 (E.D. Tex. Dec. 2, 2016); *see also PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013)

("[T]he existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer."). Here, all twelve patents asserted against Crowdstrike are also asserted against other Defendants, with five patents asserted against every other Defendant. One of those Defendants, AO Kaspersky Lab, has not moved (and cannot now move) to transfer, meaning that the Court will be adjudicating at least ten of those twelve patents regardless of Crowdstrike's motion. If this case were transferred, the Austin Division would need to construe and adjudicate those same patents that are already being adjudicated in the consolidated case in this Court. Moreover, Defendants in the other co-pending cases have brought patent infringement counterclaims of their own against the same Webroot/OTI products (including at least BTIS and WSA), which are all at issue in the present case. Requiring the Austin Division to duplicate the work of adjudicating claims of patent infringement concerning the same accused products would lead to inefficiencies, inconsistencies, and judicial waste.

Moreover, and contrary to Crowdstrike's argument, this case is currently in the *Markman* brief stage and opening briefs have been exchanged, as have infringement and invalidity contentions on most of the overlapping patents. "Transferring a case that has been actively litigating in one court causes set backs and takes time. Thus, transfer to the Austin Division would likely cause a delay." *PaSafeShare*, 2021 WL 1298933 at *4. For the same reasons, this factor strongly weighs against transfer.[5]

---

[5]     Crowdstrike cites to *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) for the proposition that judicial economy should not negate the significance of having trial "close to where most of the identified witnesses reside." Mot. at 13. But *Zimmer* did not involve the same patents being adjudicated in parallel by multiple District Courts. Similarly, *NetScout Sys., Inc.* focused on the Plaintiff's lack of any reasonable connection to the Western District of Texas, and the fact that the co-pending cases were not filed until after the Defendant had moved to transfer. *See In re NetScout Sys., Inc.*, 2021-173, 2021 WL 4771756, at *4-5 (Fed. Cir. Oct. 13, 2021). In this case, all of the co-pending cases were filed in March of 2022, well before any Defendant moved to transfer.

**B.      The Public Interest Factors Favor Waco**

       1.    **Public Factor 1**: Administrative difficulties flowing from court
congestion heavily weighs against transfer

The relevant inquiry here is the "speed with which a case can come to trial and be resolved."

*In re Genentech, Inc.* 566, F.3d 1338, 1347 (Fed. Cir. 2009). This Court has recognized that

congestion in the Austin Division weighs against transfer. *See Solas OLED Ltd. v. Apple Inc.*,

6:19-CV-00537, 2020 WL 3440956, at *7 (W.D. Tex. June 23, 2020) ("Since the Austin Division

has one of the highest caseloads per judge in the country, the overall WDTX time-to-trial is not

representative of the time-to-trial in the Waco Division which has a patent-specific Order

Governing Proceedings ('OGP').")*; WSOU Invs.*, 2021 WL 1298935 at *5 ("given the congested

Austin Division and a patent familiar Waco Division, this factor weighs against transfer.");

*ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108, 2021 WL 401989, at *7 (W.D. Tex Jan. 26,

2021) ( "faster time to trial within the Waco Division").

When limited to cases involving intellectual property, the Waco Division is significantly

more expeditious in median times to trial than the Austin Division:

| Judge | Average Days to Trial (IP Cases) |
|---|---|
| Honorable Alan Albright | 721 |
| Honorable Lee Yeakel | 909 |
| Honorable Robert Pitman | 836 |

*See* Hill Decl. ¶¶ 15-17; *id.* Exs. M-O. A review of pending cases confirms that the Austin Division

is experiencing more congestion than the Waco Division in bringing IP cases to trial.[6] Also, unlike

---

6     *See, e.g., Bowmar Archery LLC v. VIP Veteran Innovative Products* LLC, No. 1:22-cv-
00346-RP (W.D. Tex.) (jury trial set for 889 days after complaint on September 16, 2024);
*Monkeymedia, Inc. v. Amazon.Com, Inc.*, No. 1:20-cv-00010-LY (W.D. Tex.) (no jury trial
scheduled, but scheduling conference set for 1125 days after complaint on Feb. 1, 2023); *Sesaco
Corporation v. Equinom Ltd. et al*. No. 1:20-cv-01053-LY (W.D. Tex.) (no jury trial scheduled,
but scheduling conference set for 836 after complaint on Jan 30, 2023); *Identity Security LLC v.*

the Austin Division, "this Division has adopted patent rules to ensure that patent cases proceed much more expeditiously." *Dali Wireless,* 2021 WL 5316409, at *7. A transfer to the Austin Division would significantly delay the trial date that has already been set in this case and would contribute to even further congestion in the Austin Division.[7] *See In re Planned Parenthood Fed. Of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) (holding that a district court's finding that docket efficiency and a cases' progress in timely moving towards trial counsel against transfer was not an abuse of discretion).

Crowdstrike's citation to *Sonrai Memory Ltd.* is inapposite. The Court in *Sonrai* merely found that the parties in that case had focused on an erroneous comparison—respective patent caseloads—and that neither introduced evidence comparing trial times. *See Sonrai Memory Ltd. v. Oracle Corp.*, No. 21-cv-00116, 2022 WL 315023, at *3-4 (W.D. Tex. Feb 2. 2022). Webroot has shown that transferring this case to the Austin Division would significantly increase the time to trial and delay resolution of this case. *See* Hill Decl. ¶¶ 15-17; *id.* Exs. M-O. Accordingly, this factor weighs heavily against transfer.

> 2. <u>**Public Factor 2**</u>**: Local interest in having localized interests decided at home is neutral**

For this factor to weigh in favor of transfer, Crowdstrike must show a factual connection between the Austin Division and the events that gave rise to this case. *See Word to Info, Inc. v. Facebook, Inc.,* No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). A

---

*Apple, Inc.* No. 1:22-cv-00058-LY (W.D. Tex.) (no jury trial scheduled, but scheduling conference set for Jan. 19, 2023, almost two weeks after scheduled jury trial in the Waco Division prior to transfer); *Concrete Support Systems, LLC v. Bond Formwork Systems, LLC et al.*, No 1:20-cv-01150-LY (W.D. Tex.) (no jury trial scheduled, but scheduling conference set for 802 days after complaint on Jan. 30, 2023).

[7]    Crowdstrike's statistics also omit the addition of Judge Gilliland, who took the bench in April of this year, and who has already made multiple rulings in this case.

14

generalized commercial presence is not sufficient to demonstrate a meaningful local interest in a case. *PaSafeShare*, 2021 WL 1298933 at *5. Additionally, as other district courts have recognized, a patent case does not generally give rise to a local controversy or interest. *Id*.

Crowdstrike has not identified any meaningful connection that weighs in favor of transferring this case to the Austin Division. The research and development activities that lead to the Crowdstrike Accused Products were performed in California; Washington; and Israel. *See* Hill Decl. ¶ 5; *id.* Ex. C at 14. All of the persons identified by Crowdstrike as knowledgeable about the development of the CrowdStrike Accused Products are located in California. *See* Mot. at 3. The engineers responsible for supporting the CrowdStrike Accused Products are dispersed throughout the country, and none are based in Crowdstrike's Austin office. *See* Cecilio Decl. ¶ 19; *see also* Hill Decl. ¶¶ 8-10; *id.* Exs. F-H. Austin has no particularized interest over the Waco Division in adjudicating products that were not designed in the Austin Division. *See In re Planned Parenthood*, 52 F.4th at 631-632 (agreeing that no local interest existed because case concerned [defendant's] operations statewide and witnesses were scattered across the state and the country).

Crowdstrike at most identifies a general commercial presence in Austin, which does not favor transfer. *PaSafeShare*, 2021 WL 1298933 at *5. Crowdstrike admits that its principal place of business is Sunnyvale, California – *not* Austin. *See* Answer at ¶ 1. Only ▮ of Crowdstrike's workforce lives in the Austin Division, with ▮▮▮ of those individuals working from Crowdstrike's Austin office. *See* Hill Decl. ¶ 3; *id.* Ex. A at 4; Hill Decl. ¶ 18; *id.* Ex. P at 11.

Accordingly, Crowdstrike has failed to demonstrate that it has anything more than a general commercial presence in the Austin Division, let alone a connection between the Austin Division and the events that gave rise to this case. This factor is therefore neutral.

### 3.   Remaining Public Factors are Neutral

Webroot/OTI agrees that Public Factors 3 and 4 are neutral.

████████████████████████████████████

Respectfully submitted,

Date: December 16, 2022

/s/ Jeffrey D. Mills

MARK D. SIEGMUND
 mark@swclaw.com
**STECKLER WAYNE
CHERRY & LOVE, PLLC**
8416 Old McGregor Rd.
Waco, Texas 76712
Telephone: (254) 651-3690
Telecopier: (254) 651-3689

JEFFREY D. MILLS
 jmills@kslaw.com
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Telephone: (512) 457-2027
Telecopier: (202) 626-3737

STEVEN ROBERT SPRINKLE
 ssprinkle@sprinklelaw.com
**SPRINKLE IP LAW GROUP**
1301 W. 25th Street, Suite 408
Austin, Texas 78705
Telephone: (512) 637-9221
Telecopier: (512) 371-9088

CHRISTOPHER C. CAMPBELL
 ccampbell@kslaw.com
PATRICK M. LAFFERTY
 plafferty@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 737-0500
Telecopier: (202) 626-3737

BRIAN J. EUTERMOSER
 beutermoser@kslaw.com
BRITTON F. DAVIS
 bfdavis@kslaw.com
**KING & SPALDING LLP**
1401 Lawrence Street, Suite 1900
Denver, Colorado 80202
Telephone: (720) 535-2300
Telecopier: (720) 535-2400

*Counsel for Webroot, Inc. and
Open Text, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served electronically to all counsel of record on this 16th day of December, 2022.

*/s/ Jeffrey D. Mills*
Jeffrey D. Mills
